**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Patrick Michael SCOTT, Defendant-Appellant.**

**No. 76–1805.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1976.

Decided Jan. 7, 1977.

1. Sponsored by the Cincinnati Chapter of the Federal Bar Association in 1971, as revised and supplemented.

Kent W. Mudie, Roach, Twohey, Maggini & Brady, Grand Rapids, Mich. (Court-appointed—CJA), for defendant-appellant.

Frank S. Spies, U. S. Atty., Grand Rapids, Mich., for plaintiff-appellee.

Before WEICK, McCREE and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

Patrick Michael Scott appeals from his conviction for violation of 18 U.S.C. § 871, which forbids knowing and willful threats to take the life of the President or Vice President of the United States. After a four-day jury trial, Scott was convicted on the first count of the information, based on threats allegedly made on June 20, 1975, but acquitted on the second count, charging threats uttered on July 5, 1975.

In this appeal, Scott contends that the trial court's supplemental instruction[1] to the jury about its inability to reach a unanimous verdict was erroneous, and that the court erroneously permitted the government to call a rebuttal witness to testify about incriminating statements allegedly made by appellant without notice to de-

---

1. That instruction, and the instruction to the jury to return a verdict on the count about which they had already agreed, are printed in full in the Appendix.

fense counsel sufficient to allow him to prepare cross-examination.

Because we conclude that the trial court's supplemental charge went beyond the exceedingly narrow bounds within which we have confined the use within this circuit of the "*Allen* charge"[2] to break a jury deadlock, we reverse. It is therefore unnecessary for us to decide whether the government's disclosure of the rebuttal witness' expected testimony was timely and whether the trial should have been continued to allow preparation for cross-examination.

## I. The Objection was Timely

■ We are faced at the outset with the government's contention that we cannot consider Scott's objection to the supplemental instruction because the objection was not timely made. When the jury, which had been deliberating more than eight hours, sent a note to the judge requesting "advice" about "some division of thinking among the jury," counsel agreed, off the record as appellant's counsel concedes, that the judge would decide upon the content of an instruction in his own discretion. That agreement was insufficient to waive objection to an incorrect charge, because "[c]ounsel had the right to assume when he agreed to the giving of supplemental instructions that the judge would not go beyond the conventional version of the *Allen* charge." *United States v. Harris*, 391 F.2d 348, 355 (6th Cir. 1968).

■ The government argues, however, that defendant waived his objection because he failed to object immediately after the instruction had been given. However, the record reveals the following. When the jury reported its division and requested further advice, its foreman replied to the court's inquiry that the division pertained to only one count. Thereupon, the court told the jury to try to reach a verdict on the count about which there was agreement,

after which it could go to dinner before resuming deliberations on the remaining count. When the jury returned within fourteen minutes and reported verdicts on both counts, counsel immediately objected. In the peculiar circumstances of this case, we conclude that Scott did not waive his objection to the supplemental instruction by failing to "[object] thereto before the jury retire[d] to consider its verdict" on the count about which they had not yet agreed. F.R.Crim.P., Rule 30.

## II. The Instruction was Unduly Coercive

As we have observed, eighty years ago the Supreme Court approved in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), a charge employed to encourage the jury to reach a verdict in a case which had already been tried twice. That charge carefully balanced the obligation of each juror to consider carefully the arguments of the other jurors about the proper verdict and the obligation of each juror to vote his conscience, and not simply to acquiesce in the opinions of the others. 164 U.S. at 501, 17 S.Ct. 154.

Since that decision, there has been heated debate about the continued propriety of the *Allen* charge. See, e. g., Note, *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge*, 53 Va. L.Rev. 123 (1967). See also the thorough analysis of the impact of jury instructions upon the small group dynamics operating within a jury in Note, *On Instructing Deadlocked Juries*, 78 Yale L.Rev. 100 (1968). Every circuit except the Fifth has either forbidden the use of the instruction or required trial judges to hew closely to the language used in the original *Allen* charge. See the exhaustive survey in *United States v. Bailey*, 468 F.2d 652, 667–668 (5th Cir. 1972).

■ Our own circuit has determined that the wording approved at the turn of the

2. The charge was approved by the Supreme Court in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). It has been described, by proponents and detractors alike, in such colorful terms as "dynamite charge," *United States v. Cheramie*, 520 F.2d 325, 329 n.

3 (5th Cir. 1975); " 'blockbuster' charge," *United States v. Hynes*, 424 F.2d 754, 755 n. 1 (2d Cir. 1970); "third degree instruction," *Leech v. People*, 112 Colo. 120, 146 P.2d 346, 347 (1944); and "shotgun instruction," *State v. Nelson*, 63 N.M. 428, 321 P.2d 202, 204 (1958).

century represents, at best, "the limits beyond which a trial court should not venture in urging a jury to reach a verdict . . ." *United States v. Harris*, 391 F.2d 348, 354 (6th Cir. 1968). Any variation upon the precise language approved in *Allen* imperils the validity of the trial. Chief Judge Aldrich explained in *United States v. Flannery*, 451 F.2d 880 (1st Cir. 1971), why such a rigid rule is required:

> This charge has been called the dynamite charge. Like dynamite, it should be used with great caution, and only when absolutely necessary. There was no call for the court to employ it, sua sponte, when the jury had been deliberating only three hours, and had reported no difficulties in agreeing. . . . The caution required dictates also that trial courts should avoid substantive departures from the formulations of the charge that have already received judicial approval. Such departures impose on appellate courts the almost impossible task of weighing the prejudicial impact of a variation of the approved charge. And in all events, the court should be careful to include all those elements of the original charge designed to ameliorate its coercive effect, and to avoid language which might heighten it.

451 F.2d at 883.[3]

■ The charge that we consider in this appeal both omitted necessary limitations and included additional comments which probably heightened the coercive effect. For example, at no point in the supplemental charge did the trial judge remind the jurors that no one of them should surrender an honest conviction about the case simply because other jurors disagreed. Although jurors should consider each others' arguments carefully, and should try to agree, nevertheless, a defendant has a right to rely on the fact that an ultimate jury disagreement is a permissible result of a trial. The reminder that no juror should merely acquiesce in the majority opinion is therefore one of the most important parts of the *Allen* charge.

■ The government relies on the fact that the trial judge included in his original charge to the jury an instruction about the right of each juror to disagree with the majority. However, an earlier reference to the importance of individual jurors' consciences is inadequate to balance a later, powerful instruction intended to produce a verdict.

■ Also impermissibly coercive was the statement that, because a retrial would have a high priority on the court's docket, juror intransigence would cause further delay in the commencement of trial of a civil case scheduled for the following week. The judge told the jury that the civil litigants had been waiting for four years for a trial, and that it would have to be postponed if the jury could not agree. He also referred to the hectic trial schedule to which he was already committed. These remarks could be understood by the jury as an admonishment to reach a verdict in order to get the case out of the way, for the sake of a harried judge and long-suffering civil parties.

We determine that the supplementary instruction was unduly coercive and that it violated Scott's right to a fair trial. Its prejudicial impact was dramatically illustrated when the jury, which had spent eight and one-half hours of fruitless deliberations, achieved unanimity in only fourteen minutes after its delivery.

For the foregoing reasons, the judgment of conviction is REVERSED, and the case is remanded for a new trial consistent with this opinion.

REVERSED.

---

3. See also the explanation of Judge Goldberg in *United States v. Amaya*, 509 F.2d 8, 13 (5th Cir. 1975):

> . . . [W]e are unwilling to risk even a small chance of increased—and therefore immediately illegitimate—jury coercion over

> that which inheres in the borderline *Allen* charge merely for the sake of instructional novelty. . . . [T]o hold otherwise would turn this court into a psychologists' symposium with resultant great expenditures of energy and yet necessarily capricious solutions.

## APPENDIX

The entire supplemental instruction was:

THE COURT: I have received a note from the Foreperson of the Jury indicating that there appears to be some division of thinking among the jurors, and requesting advice of the Court. You are entitled to the advice of the Court.

First of all, you should ask yourselves this question. You have two counts, or two charges. I am not sure from the note, which I have received, and which I have exhibited to the two Counsel, I say, I am not sure whether there is a division of opinion with reference to both counts or not. You may at any time report, if there is, a unanimity of expression. You may report on any one of the charges that you see fit to agree on. That's, first of all, what you might have in mind.

The second thing that I would state to you by way of advice is that this, of course, is a very important case, important to the defendant, important to the Government. It has another importance from this standpoint, that should, based on our experience, a sufficient time elapse that you indicated that you were totally unable to agree, it would then be necessary for the Court to declare a mistrial by reason of that fact, and then we would, of course, just be submitting it all over again on retrial to another Jury, if that's what the election was, and to what avail. Is there something that another Jury could do by way of a better job than this Jury could do?

The factors that come to my mind on that are these. Next week I will be in Grand Rapids and we will be trying a civil case that has been filed and pending for four years. Four years people are waiting to have a case heard, and that's all I do, night and day, day after day, day after day, cases people have been waiting for. The criminal cases have a priority, and so it gets to be another two or three days. Well, it does get to be that. Instead of three days of time devoted to a case, it gets to be six days for another Jury.

Now, I am only saying that so that you should be mindful of these things. I say, it's very important to the defendant, very important to the Government, if you can possibly agree.

The last thing I would say would be that, based, in my some 35 years at this, is that the time that you have deliberated is not a particularly prolonged one. I wouldn't say that it is usual, but it's not particularly unusual. There are some complex questions here, and of course you go back and you talk with each other, review, and we try to be helpful to you in the answering of your notes, explanation of anything that you felt might be helpful, and I would say that within my experience I have seen situations of this type where juries have been together all afternoon, and it gets a little close in there sometimes, and so I think it would be smart or wise to go out to dinner, not to discuss this one bit, forget the whole thing for an hour, come back, and give it some more thought.

Before you do go out to dinner, however, I would say in another 15 minutes, 20 minutes, you might be in a position, and I think I did indicate to you you should never tell us the exact status, or perhaps it could be done at this point, if your Foreperson would advise me, or advise all of us here, whether the division that you speak of pertains to both counts or to just one count.

Would you like to respond to that, or would you rather write a note on it?

THE FOREPERSON: What would be more practical, to write a note?

THE COURT: Well, I don't know. It depends on what the answer is, I suppose, and if you would feel more comfortable writing a note, why, you may do that.

THE FOREPERSON: It doesn't matter to me, just what's more what the procedure is.

THE COURT: You may tell us just this, whether the division thinking pertains to both counts or just one count?

THE FOREPERSON: One count.

THE COURT: Well, then, it would seem to me that we would—you go back into the

Jury Room and report on either count that you can report on.

THE FOREPERSON: That we can't report on.

THE COURT: I beg your pardon?

THE FOREPERSON: Say it, again, please.

THE COURT: All right. You go back to the Jury Room, and you have a jury verdict?

THE FOREPERSON: Yes.

THE COURT: That's in two counts, and you are to report on each of those two. You bring back a verdict on the one that you can bring a verdict back on.

THE FOREPERSON: I see.

THE COURT: If you are in that position. If you have a unanimity of thought on one of the counts, you may report on that to the Court and advise the Court when you are ready to do so.

You may do that now. You may retire for that purpose.