*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0269P (6th Cir.)
File Name: 03a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 01-5731

KARLOS A. CLINTON,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 00-20059—Julia S. Gibbons, District Judge.

Argued: May 9, 2003

Decided and Filed: August 5, 2003

Before: BOGGS and DAUGHTREY, Circuit Judges;
OBERDORFER, District Judge.*

---

## COUNSEL

**ARGUED:** Gregory C. Krog, Jr., Memphis, Tennessee, for
Appellant. Paul M. O'Brien, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

*The Honorable Louis F. Oberdorfer, United States District Judge for
the District of Columbia, sitting by designation.

**ON BRIEF:** Gregory C. Krog, Jr., Memphis, Tennessee, for
Appellant. Paul M. O'Brien, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. The
defendant, Karlos Clinton, was convicted by a jury at a retrial
on two counts of armed robbery, in violation of 18 U.S.C.
§§ 2 and 2113(a), (d), and two counts of carrying, using, or
brandishing a firearm during and in relation to a crime of
violence, in violation of 18 U.S.C. §§ 2 and 924(c). Clinton's
first trial had ended in a mistrial when the jury was unable to
reach a verdict despite a supplemental instruction from the
district judge consisting of the Sixth Circuit's pattern
"dynamite charge," delivered pursuant to *Allen v. United
States*, 164 U.S. 492 (1896). During jury deliberations at
Clinton's second trial before a different district judge, the jury
sent out a note asking whether it could reach a verdict on the
counts related to one robbery and remain hung on the counts
related to the other robbery. In response, the district court
delivered a "modified" *Allen* charge, described more fully
below. Less than an hour later the jury returned guilty
verdicts on all four counts, and Clinton was ultimately
sentenced to two concurrent terms of 70 months'
imprisonment for each robbery count, a consecutive sentence
of seven years on the first firearms count, and an additional
consecutive sentence of 25 years on the second firearms
count. The defendant now argues on appeal that the modified
*Allen* charge was unduly coercive and, therefore, requires
reversal. We find no reversible error and affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

The armed robberies charged in the indictment both occurred at the same federally-insured credit union, approximately a month apart. The defendant was identified as one of the two robbers involved in the offenses by several victims of both robberies – both from pretrial photo arrays and in the courtroom – and an expert testified that Clinton's fingerprint was found at the scene after one of the robberies. (The other perpetrator was never identified.) Despite this evidence, the first jury that heard the case was unable to reach a verdict, and the second jury also ran into some difficulty. When the second jury appeared to be hung with regard to one of the robberies, the district judge delivered the following supplemental instruction, reproduced here in full:

> All right. Ladies and gentlemen, the short answer to the question is yes, each count must receive a separate verdict. Any inability to reach judgement on a particular count does not effect [sic] the jury's obligation to attempt to reach a unanimous verdict on all of the other counts. So, yes, each verdict is separate, and each can be returned separately.
>
> Having said that, before I send you back to complete your deliberations, I want to address the question of what is implied here, which is the concept that you may be having difficulty with respect to unanimity on one or more counts. I want to suggest a few thoughts, which you may desire to consider in your deliberations, along with the evidence in the case and the instructions that I have previously given you.
>
> Like all federal criminal cases in this district, this is an important matter. It is an important matter to the government, and it is an important matter to the defendant. The trial has been expensive, and preparation time and effort are difficult for both the defense and the prosecution. If you should fail to agree on a verdict as to

> any one count, or counts, the case is left open and undecided as to those counts. And like all cases, it will still need to be disposed of at some point in time. There appears to be no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you. Any future jury would have to be selected in the same manner as you would. We would have to go through the same process, and they would be selected from the same source or same group of individuals. So, there appears no reason to believe that the case would ever be submitted to twelve men and women who would be more conscientious, more partial [sic] or more competent to decide it, or that more or clearer evidence could be produced on behalf of either side.
>
> Of course, these things suggest themselves upon brief reflection to all of us who have been through this trial, and I'm sure you have thought of these things, to some extent, in your deliberation. The reason that I am mention[ing] them now is because some of them may have escaped your attention, which has to this point been fully occupied with an examination of the evidence in the case. They are matters, which along with other and perhaps more obvious ones, remind us how desirable it is for you to unanimously agree upon a verdict, if you can.
>
> As I told you in the instructions at the close of all the evidence, you should not surrender your honest convictions as to the weight of the evidence solely because of the opinion of other jurors, or for the mere purpose of returning a verdict. That is not what I am suggesting.
>
> However, it is your duty as jurors to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgement. Each of you must decide the case

for yourselves but you should do so only after consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, you should not hesitate to re-examine your own views and change your opinion, if convinced it is erroneous.

In order to bring twelve minds to a unanimous result, you must examine the question submitted to you with candor and frankness, and with proper deference to and regards for the opinions of each other. That is to say, in conferring together, each of you should pay due attention and respect to the views of the others and listen to each others' arguments with a disposition to re-examine your own views, if appropriate.

If the greater number of you are for conviction on a given count, each dissenting juror ought to consider whether a doubt in his or her own mind is truly a reasonable one, since it makes no effective impression upon the minds of so many equally honest, equally conscientious fellow jurors, who bear the same responsibility, serve under the same oath, and have heard the same evidence, with, [one] may assume, the same attention and equal desire to arrive at the truth.

On the other hand, if a majority or even a lesser number of you are for acquittal, other jurors ought to seriously ask themselves again, and most thoughtfully, whether they do not have reason to doubt the correctness of a judgement, which is not concurred in by many of their fellow jurors, and whether they should not distrust the weight and sufficiency of evidence which fails to convince the minds of several of their fellow jurors beyond a reasonable doubt.

You are not partisans, you are judges. Judges of the facts. Your sole interest here is to speak the truth from the evidence in the case. You are the exclusive judges of the credibility of all the witnesses, and of the weight and

effect of all the evidence. In the performance of this high duty, you are at liberty to disregard all comments of both counsel and court, including, of course, these remarks I am making now.

Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of evidence. But remember also that after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict, if you can do so without violating your individual judgement and your cons[cience]. Remember too that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.

In order to make the decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is on the government. Above all, keep constantly in mind that unless your final conscientious appraisal of the evidence in this case clearly acquires [sic] it, the accused should never be exposed to the risk of having to run twice the ga[u]ntlet of a criminal prosecution, and to endure a second time the mental, emotional, and financial strain of a criminal trial.

You may conduct your deliberations as you choose, but I suggest that you now carefully re-examine and reconsider all the evidence in the case bearing on the questions before you. You may be leisurely in your deliberations, and as leisurely as the occasions may require, and you shall take all the time that you feel is necessary. No one is here to rush you to a judgement or decision in this case.

I am now going to ask you to retire and to continue your deliberations in such manner as shall be determined

by good and conscientious judgement, which I know you will duly exercise.

And Mr. Foreperson, certainly, if you have any other questions or any information you want us to provide, other than the things I have already told you [that] you should not provide to the Court, we will certainly take more questions. This is not to say that you can't ask questions. I just thought that in light of this question that was asked and the implications of the question, that these words would be appropriate at this time.

Less than an hour after receiving this instruction, the jury returned guilty verdicts on all four counts of the indictment.

### DISCUSSION

Normally, we review the decision to give an *Allen* charge for abuse of discretion, recognizing that "the presiding judicial officer is in the best position to decide when to give the charge." *United States v. Frost*, 125 F.3d 346, 373 (6th Cir. 1997) (citation and internal quotation omitted). The relevant inquiry is "whether, in its context and under all the circumstances, [ the charge] . . . was coercive." *Id.* (citation and internal quotation omitted). In this case, however, there was no objection to the *Allen* charge at trial, and we therefore review the defendant's claim under Rule 52(b) of the Federal Rules of Criminal Procedure to determine whether there was plain error. *See Frost*, 125 F.3d at 373.

Plain error is that which is "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). To establish plain error, the defendant must show: (1) that an error occurred, (2) that it was plain and (3) so seriously affected the defendant's substantial rights (4) that it called into question the fairness, integrity, or public reputation of the proceedings. *See United States v. Vincent*, 20 F.3d 229, 234 (6th Cir. 1994) (citing *Olano*, 507 U.S. at 732-37). For the reasons set out in

this opinion, we conclude that the defendant has not met that standard in this case.

Well-settled precedent establishes that a criminal defendant being tried by a jury is entitled to an uncoerced and unanimous verdict of that body. *See Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). The practice of giving a "dynamite charge," meant to "blast" a deadlocked jury into rendering a unanimous verdict, was first approved by the Supreme Court in *Allen v. United States*, in which the Court found that reversal was not warranted based on a supplemental instruction to the jury that told those jurors who were in the minority to reconsider their views in light of those held by the majority. *See* 164 U.S. at 501-02.

Since *Allen*, the federal courts of appeal have approved various supplemental instructions, and many, exercising supervisory authority, have mandated the use of a particular instruction.[1] In this circuit, while we have generally approved use of the Sixth Circuit Pattern Instruction, we have never explicitly mandated the use of that or any instruction to the exclusion of others. We decline to do so now, although we take the occasion to express a strong preference for the pattern instruction and to point out that its use will, in most instances, insulate a resulting verdict from the type of appellate challenge that we now face in this case.

The charge given at Clinton's retrial was modeled closely on the instruction set out in the Devitt & Blackmar practice

---

[1]For example, the D.C. Circuit has mandated use of the American Bar Association model deadlock instruction. *See United States v. Thomas*, 449 F.2d 1177, 1183-86 (D.C. Cir. 1971)(en banc); *United States v. Strothers*, 77 F.3d 1389, 1391 (D.C.Cir. 1996)(invalidating district court's use of the "Alternative B" deadlock charge in the model jury instructions because it was not the "Alternative A" charge approved in *Thomas*). The Seventh Circuit, acting under its supervisory powers, devised its own *Allen* charge in *United States v. Silvern*, 484 F.2d 879, 882 (7th Cir. 1973).

manual and repeated in the Committee Commentary to Sixth Circuit Pattern Jury Instruction 8.04. *See* E. Devitt & C. Blackmar, Federal Jury Practice & Instructions (3rd Edition 1977), § 18.14. The opening paragraph addressing the jury's specific question is the only relevant respect in which the district court deviated from the modified Devitt & Blackmar charge.

Clinton's primary objection to the charge is the claim that it improperly created the impression that each juror's own view of the evidence did not achieve significance until "many" or "several" of his fellow jurors shared that view. The relevant portion of the charge read as follows:

> On the other hand, if a majority or even a lesser number of you are for acquittal, other jurors ought to seriously ask themselves again, and most thoughtfully, whether they do not have reason to doubt the correctness of a judgement, which is not concurred in by many of their fellow jurors, and whether they should not distrust the weight and sufficiency of evidence which fails to convince the minds of several of their fellow jurors beyond a reasonable doubt.

In contrast, the Sixth Circuit Pattern Jury Instruction 9.04 reads as follows:

> (1)  Members of the jury, I am going to ask that you return to the jury room and deliberate further. I realize that you are having some difficulty reaching unanimous agreement, but that is not unusual. And sometimes after further discussion, jurors are able to work out their differences and agree.

> (2)  Please keep in mind how very important it is for you to reach unanimous agreement. If you cannot agree, and if this case is tried again, there is no reason to believe that any new evidence will be presented, or that the next

twelve jurors will be any more conscientious and impartial than you are.

> (3)  Let me remind you that it is your duty as jurors to talk with each other about the case;  to listen carefully and respectfully to each other's views;  and to keep an open mind as you listen to what your fellow jurors have to say. And let me remind you that it is your duty to make every reasonable effort you can to reach unanimous agreement. Each of you, whether you are in the majority or the minority, ought to seriously reconsider your position in light of the fact that other jurors, who are just as conscientious and impartial as you are, have come to a different conclusion.

> (4)  Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt. None of you should hesitate to change your mind if, after reconsidering things, you are convinced that other jurors are right and that your original position was wrong.

> (5)  But remember this. Do not ever change your mind just because other jurors see things differently, or just to get the case over with. As I told you before, in the end, your vote must be exactly that – your own vote. As important as it is for you to reach unanimous agreement, it is just as important that you do so honestly and in good conscience.

(6)  What I have just said is not meant to rush or pressure you into agreeing on a verdict.  Take as much time as you need to discuss things.  There is no hurry.

(7)  I would ask that you now return to the jury room and resume your deliberations.

In addition to contending that the reference to a "numerosity requirement" rendered the instruction given in this case unduly coercive, the defendant also challenges the charge because it emphasized the expense of the trial.

In response, the government contends that the Devitt & Blackmar charge was approved by this court in *United States v. Giacalone*, 588 F.2d 1158 (6th Cir. 1978).  There, in affirming the defendant's conviction over his objection that the modified *Allen* charge coerced the jury into finding him guilty, we observed:

> While it is true that we have held that any variation upon the precise language approved in Allen imperils the validity of the trial, we observe that the trial judge's statement roughly follows the instruction contained in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 18.14 (3d ed. 1977), an instruction implicitly approved by the Supreme Court in *Kawakita v. United States*, 343 U.S. 717 (1952).

*Id.* at 1166-67 (citation and internal quotation omitted).  The government asserts that this explicit approval of a charge very similar to the one used by the district court here forecloses any finding of error, plain or otherwise.

The defendant, on the other hand, argues that, although *Giacalone* approved a charge that "roughly follow[ed]" the Devitt & Blackmar charge, it did not set out the charge itself and thus cannot be taken as authority to approve a reference to the cost of a retrial.  In addition, the defense argues that *Giacalone*'s reliance on *Kawakita* is misplaced because the

Supreme Court in *Kawakita* did not discuss or explicitly rule on the *Allen* charge at issue. Of course, we are not at liberty to second-guess *Giacalone*'s reliance on *Kawakita* because of circuit precedent establishing that a published decision of the court is binding on subsequent panels unless an "inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) (citation omitted).

We note, nevertheless, that the majority of Sixth Circuit cases dealing with *Allen* charge challenges since *Giacalone* have involved the pattern instruction. *See, e.g., United States v. Reed*, 167 F.3d 984, 991 (6th Cir. 1999) (approving the use of the pattern *Allen* charge and observing that charge was "properly worded"); *Frost*, 125 F.3d at 374-75 (noting that the pattern instruction given in the case "contained language which this circuit has identified as critical to any *Allen* charge:  it directed both majority and minority jurors to reconsider their positions, and it cautioned all jurors not to surrender their personal convictions merely in order to achieve consensus by acquiescing in the majority opinion") (citations omitted); *United States v. Tines*, 70 F.3d 891, 896-97 (6th Cir. 1995) (holding that the use of the pattern *Allen* charge was not coercive because it asked both the minority and majority jurors to reconsider the views of others, and there was no charge for one side to change its mind).

The conclusion to be drawn from these cases is that while the pattern instruction has typically been viewed as non-coercive, it is not the only instruction a district court may use. The cases cited above base their findings on the content of an instruction, namely, that it must address both those in the majority and those in the minority, *see United States v. Harris*, 391 F.2d 348, 352-53 (6th Cir. 1968), and that it must remind the jury that no one should surrender honest beliefs simply because others disagree, *see United States v. Scott*, 547 F.2d 334, 337 (6th Cir. 1977).  The instruction in this case included both of the requisite elements.  Indeed, the

district judge reminded jurors not to surrender their convictions twice, saying:

> As I told you in the instructions at the close of all the evidence, you should not surrender your honest convictions as to the weight of the evidence solely because of the opinion of other jurors, or for the mere purpose of returning a verdict. That is not what I am suggesting. . . . Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of evidence.

Although we find problematic the language challenged by the defendant – that only in the event that "many" or "several of [their] fellow jurors" are for acquittal should the "other jurors" reexamine their views – we cannot say that the instruction rises to the level of plain error, given that it was accompanied by the statements quoted above. Similarly, the reference to the cost of a retrial, while troubling, does not, in this case, render the charge coercive. Although other circuits have at times found that references to cost contribute to the coercive effect of a supplemental instruction, *see, e.g.*, *United States v. McElhiney*, 275 F.3d 928, 945 (10th Cir. 2001) (finding that instruction stressing expense of retrial contributed to coercive effect requiring reversal), we conclude that because the reference to the expense of a retrial was only one of several reasons given to encourage the jury to agree on a verdict, it did not render the charge coercive *per se* and cannot be said to constitute plain error. We nevertheless caution that such a comment could taint an *Allen* charge and counsel strongly against its inclusion.

Finally, the district court's response to the jury's question about a partial verdict does not render the supplemental instruction plain error. Certainly, the court's statement in this regard could have been clearer. However, because it was followed by a charge that reiterated the instruction that jurors should not surrender their conscientiously held views, we do not believe it rises to the level of plain error. The district

judge's seemingly off-hand comment about the jury's ability to "disregard" the "comments of both counsel and court" falls into the same category. It was made in the context of the instruction to the jury to act as "judges of the facts."

In sum, the district court's failure to use the Sixth Circuit pattern instruction, while risky, did not amount to reversible error in the context of this case. The instruction included all the necessary elements of the *Allen* charge, and it closely followed an instruction that has received some degree of approval from this court. Given that, we cannot say that the error here "seriously affected the fairness, integrity or public reputation of the proceedings." *Vincent*, 20 F.3d at 234 (citing *Olano*, 507 U.S. at 736-37).

### *CONCLUSION*

For the reasons set out above, we **AFFIRM** the judgment of the district court.