UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Albert NICHOLS,
Defendant–Appellant,

and

United States of America,
Plaintiff–Appellee,

v.

Carlton V. Smith, Defendant–Appellant.

Nos. 02–6312, 02–6313.

United States Court of Appeals,
Sixth Circuit.

June 11, 2004.

William Cohen, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Michael J. Love, Clarksville, TN, for Defendant–Appellant.

Before BOGGS, Chief Judge; GUY, Circuit Judge; and HOOD, District Judge.*

HOOD, District Judge.

Defendants–Appellants Thomas Albert Nichols and Carlton V. Smith were found guilty by a jury of Bank Extortion with use of a dangerous weapon and aiding and abetting in violation of 18 U.S.C. §§ 2113(d) and 2 (Count 1) and Bank Extortion by forced accompaniment and aid-

---

\* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

ing and abetting in violation of 18 U.S.C. §§ 2113(e) and 2 (Count 2). Nichols was sentenced to serve 300 months of imprisonment on Count 1 and 405 months of imprisonment on Count 2. Smith was also sentenced to 300 months of imprisonment on Count 1 and 405 months of imprisonment on Count 2. On appeal, both Nichols and Smith challenge the district court's jury instruction for a hung jury pursuant to *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Smith also alleges that his constitutional right to be free from double jeopardy was violated when he was charged and convicted of the instant offense after he was previously prosecuted and convicted of a conspiracy charge involving the same robbery and in the sentencing phase where the same facts were used in the prior sentencing to enhance the second sentence. Smith further challenges the district court's denial of his motion for downward departure under U.S.S.G. § 5K2.0. For reasons set forth below, we affirm the judgments entered by the district court.

## I.

This case involves a home invasion and bank robbery in Clarksville, Tennessee. Carolyn Pierce is an area manager for First American Bank. (J.A. 317) On December 12, 1996. Douglas Daigle and Smith went to the Pierce household and took Mark Pierce, a seven-year old, and his grandparents, Leonard and Nancy Beaudoin, hostages. (J.A. 326) Daigle and Smith also took Don Pierce hostage when he came home from work. (J.A. 292) At approximately 7:30 p.m., Ms. Pierce called home and spoke to her son. She later arrived home and was taken hostage. (J.A. 324) During the night, Ms. Pierce and her family were threatened with harm unless she delivered money to the men holding her and her family captive. (J.A. 326)

Ms. Pierce was told that a bomb would be strapped to her husband and that if she successfully delivered the money from the bank, she would be able to defuse the bomb and save her husband. (J.A. 330–31)

The next morning, December 13, 1996, around 4:00 a.m. or 5:00 a.m., Mr. Pierce was bound and gagged and tied to his Jeep Grand Cherokee and was left outside a Waffle House on Riverside Drive in Clarksville. (J.A. 302–03) Ms. Pierce went to the bank and emptied out the vault in the amount of $851,000. (J.A. 359) Two bags she had filled with the money were placed in the back of Ms. Pierce's truck. Daigle told her that there would be an envelope in the glove box which contained the directions of where to park the truck. Ms. Pierce parked the truck a short distance from the bank. As she was walking back to the bank, she observed a black convertible Mustang drive past her which eventually parked next to her pick-up truck. (J.A. 349–55) Ms. Pierce returned to the bank, waiting for a call which never came. At 9:30 a.m., bank security was contacted. (J.A. 355–57) Mr. Pierce was located, unharmed, by some private citizens, freed by officers of the Clarksville Police Department and reunited with his wife. (J.A. 304–05)

The widow of Daigle, Capri Seiber, testified at trial that Mr. Nichols was driving the Mustang. (J.A. 464–65) Ms. Seiber testified that she heard her husband and Smith over two-way radios talking about the money they obtained from Ms. Pierce's delivery. (J.A. 464) Ms. Seiber stated that she and Daigle in one car, and Smith and Nichols in a black Mustang, drove to Goodlettsville where they divided up the money in a hotel room at approximately 9:30 a.m. that morning. (J.A. 465–67)

On April 27, 2000, Nichols and Smith were indicted in the Middle District of

Tennessee on three counts: 1) Bank Extortion with use of a dangerous weapon and aiding and abetting in violation of 18 U.S.C. §§ 2113(d) and 2 (Count 1); 2) Bank Extortion by forced accompaniment and aiding and abetting in violation of 18 U.S.C. §§ 2113(e) and 2 (Count 2); and 3) Use and Carrying of Firearms during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count 3). Count 3 was subsequently dismissed by the Government. Trial on the remaining two counts against Nichols and Smith began on May 13, 2002. The jury returned a verdict of guilty against both Nichols and Smith on both counts on May 23, 2002.

## II.

### A. *Allen* Charge

A decision to give an *Allen* charge is reviewed using an abuse of discretion standard. *United States v. Sawyers,* 902 F.2d 1217, 1220 (6th Cir.1990). In *Allen,* the Supreme Court approved the use of a supplemental instruction designed to encourage the jury to reach a verdict by requesting each juror to reconsider his or her respective position during continued deliberations. This court has found the *Allen* charge "approaches the limits beyond which a trial court should not venture in urging the jury to reach a verdict." *United States v. Harris,* 391 F.2d 348, 354 (6th Cir.1968). The Sixth Circuit Pattern Criminal Jury Instruction 9.04 tracks but does not duplicate the *Allen* instruction. *United States v. Frost,* 125 F.3d 346, 374 (1997).

This Circuit has identified language which is critical to any *Allen* charge. *Id.* at 375. The first is that the charge be directed to both majority and minority jurors to reconsider their positions. *See Williams v. Parke,* 741 F.2d 847, 850 (6th Cir.1984). The second is that it cautions all jurors not to surrender their personal convictions merely in order to achieve consensus by acquiescing in the majority opinion. *See United States v. Aloi,* 9 F.3d 438, 443 (6th Cir.1993). The length of jury service may also render a juror in the minority particularly susceptible to coercion. *Frost,* 125 F.3d at 376. The length of time in which a jury may reach a verdict following the giving of the charge cannot be considered in determining whether the charge was coercive. *United States v. Giacalone,* 588 F.2d 1158, 1168 (6th Cir. 1978). However, once an *Allen* charge is found coercive, the length of time between the giving of the charge and the rendering of the verdict becomes relevant to determine whether defendant has been prejudiced by the giving of the coercive charge. *Williams,* 741 F.2d at 850 n. 2.

Although circumstances alone can render an *Allen* charge coercive, this court has traditionally found a charge to be coercive when the instructions themselves contained errors or omissions. *Id.* In *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). the Supreme Court reviewed the charge "in its context and under all the circumstances." *Id.* In *United States v. Scott,* 547 F.2d 334, 337 (6th Cir.1977), this court reversed the judgment because the trial court failed to remind the jury that no one should surrender honest beliefs simply because others disagreed, and suggested that continued disagreement would interfere unacceptably with commencement of a pending trial. *Scott,* 547 F.2d at 337. This court also reversed a judgment where the trial court told the jury they were "the only ones" who could reach a verdict. *Jones v. Norvell,* 472 F.2d 1185 (6th Cir. 1973). The court has found reversible error when the trial court instructed the minority to consider the views of the majority but not vice-versa. *Harris,* 391 F.2d at 352–53.

■ The trial in this case began on May 13, 2002 and the jury rendered its verdict on May 23, 2002. On May 22, 2002, the jury deliberated for a few hours. Soon after the jury reconvened on the morning of May 23, 2002, the trial court received a note from the foreperson stating,

> If in the event we are unable to reach a unanimous decision due to one Juror's inability to reason with the rest of us, may he or she be replaced with an alternate?

(J.A. 491) At 10:10 a.m., the trial court responded on the record with the following instruction:

> Ladies and gentlemen, the answer to that question is no. That is not an option. But in view of your difficulties in reaching unanimous agreement, let me give you a few additional Instructions. I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case. And I have a few additional comments I would like for you to consider as you do.
>
> This is an important case. The trial has been expensive in time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict, the case is left open and must be tried again. There is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you. Any future Jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that this case can ever be submitted to 12 men and women more conscientious, more impartial or more competent to decide it, or that more or clearer evidence could be produced.

> If a substantial majority of your number are for a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression upon the minds of the others. On the other hand, if a number of you are in favor of an acquittal, the rest of you should ask yourselves again and most thoughtfully whether you should accept the weight and sufficiency of evidence which fails to convince your fellow Jurors beyond a reasonable doubt.

> Remember at all times that no Juror is expected to give up an honest belief that he or she may have as to the weight or effect of the evidence. But remember also after full deliberation and consideration of the evidence in this case, it is your duty to agree upon a verdict if you can do so without surrendering your honest belief. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the Defendant should have your unanimous verdict of not guilty. You may be as leisurely in your deliberations as the occasion may require, and you should take all of the time which you feel is necessary. I will ask you now to retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the Instructions I have previously given to you. You may retire; thank you.

(J.A. 491–93) After the jury retired, Smith's counsel placed an objection on the record to the reading of the *Allen* charge. (J.A. 493) Approximately ten minutes later, the parties were informed that the jury had reached a verdict. (J.A. 64)

The *Allen* charge given by the trial court was not taken from the Sixth Circuit

pattern instruction. *See, Pattern Criminal Jury Instructions of the District Judges Association of the Sixth Circuit,* Instruction No. 9.04 (1991). Instead, the trial court read almost *verbatim* the *Allen* charge from the 1990 version of the Fifth Circuit's pattern instruction. *See United States v. Pace,* 10 F.3d 1106, 1122 n. 15 (5th Cir.1993).[1] On many occasions, the Fifth Circuit has upheld the language of the *Allen* charge set forth in the 1990 version of the Fifth Circuit's pattern instruction. *Pace.* 10 F.3d at 1125. The language of the *Allen* charge used by the trial court also appears in the current version of the *Allen* charge found in O'Malley and the third edition of Devitt & Blackmar, although the instructions in the O'Malley and Devitt & Blackmar editions are longer. *See* O'Malley, Grenig & Lee, § 20.08; E. Devitt & C. Blackmar. Federal Jury Practice & Instructions (3rd Edition 1977), § 18.14.

This Circuit has had the opportunity to review the *Allen* charge found in Devitt & Blackmar in *United States v. Clinton,* 338 F.3d 483 (6th Cir.2003). The panel expressed "a strong preference" for the Sixth Circuit pattern *Allen* charge instruction but noted that the failure to use the Sixth Circuit instruction, "while risky," did not amount to reversible error. *Id.* at 488, 90–91. The panel identified two elements which must be included in an *Allen* charge: 1) "it must address both those in the majority and those in the minority," and, 2) "it must remind the jury that no one should surrender honest beliefs simply because others disagree." *Clinton,* 338 F.3d at 490. Although the panel found problematic the language that where "many" or "several" of their fellow jurors are for acquittal, the "other jurors" should reex-

amine their views, the panel concluded that the instruction did not rise to the level of plain error, given that it was accompanied by the language instructing the jurors not to surrender their honest convictions. *Id.*

The trial court in this case used the following language:

> If a substantial majority of your number are for a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression upon the minds of the others. On the other hand, if a number of you are in favor of an acquittal, the rest of you should ask yourselves again and most thoughtfully whether you should accept the weight and sufficiency of evidence which fails to convince your fellow Jurors beyond a reasonable doubt.

(J.A. 492) Although this language is "problematic" because it does not expressly instruct the "majority" to reconsider its views, like the language in *Clinton,* given that it was accompanied by the language that the jurors should not surrender their honest belief, we cannot say that the trial court abused its discretion in giving this instruction.

■ As to the cost of the trial and retrial, although we have counseled strongly against its inclusion, the reference to the expenses of retrial does not render the charge coercive. *See Clinton.* 338 F.3d at 490.

■ With regard to the language, "there is no reason to believe that this case can ever be submitted to 12 men and

---

1. In 1997, the Fifth Circuit's *Allen* charge pattern instruction was changed removing the language "a substantial majority" of the jurors, "each dissenting juror," and "a majority or even a lesser number" of jurors. *See* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions (5th Ed.2000), § 20.08, Note.

women more conscientious, more impartial or more competent to decide it, or that more or clearer evidence could be produced," similar language is found in the Sixth Circuit pattern instruction. The Sixth Circuit pattern instruction states,

> Please keep in mind how very important it is for you to reach unanimous agreement. If you cannot agree, and if this case is tried again, there is no reason to believe that any new evidence will be presented, or that the next twelve jurors will be more conscientious and impartial than you are.

*Pattern Criminal Jury Instructions of the District Judges Association of the Sixth Circuit.* Instruction No. 9.04 (1991). This court has found that the use of the Sixth Circuit pattern instruction will, in most instances, insulate the *Allen* charge from appellate challenge. *Clinton,* 338 F.3d at 488. Although this court has noted that for a judge to tell a jury that a case must be decided is coercive in nature and misleading in fact and that the possibility of a disagreement by the jury and lack of a unanimous verdict is a protection conferred upon a defendant in a criminal case by the Constitution. *See Harris,* 391 F.2d at 355. Given that the jury was also instructed not to give up an honest belief. we cannot say that this instruction, as a whole, was coercive.

The *Allen* charge given by the trial court, although problematic, is not coercive. The trial court did not abuse its discretion in giving the charge.

**B. Double Jeopardy**

**1. Indictment**

A claim of double jeopardy is reviewed under a *de novo* standard of review. *United States v. Dakota,* 197 F.3d 821, 826 (6th Cir.1999). Smith argues that this second prosecution violates his rights under the Double Jeopardy Clause. In October 2000, Smith was first convicted of conspiracy to commit bank extortion in a trial in the Eastern District of Tennessee. *See United States v. Smith,* 320 F.3d 647 (6th Cir.2003). The conspiracy charge in the first case in the Eastern District involved conspiracy to commit bank extortion in Clarksville, the same incident involved in the second substantive act of bank extortion in the second case in the Middle District.

The Double Jeopardy Clause protects against successive prosecution and prohibits multiple punishments for the same criminal act. *Monge v. California,* 524 U.S. 721, 727–28, 118 S.Ct. 2246, 141 L.Ed.2d 615. 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615. 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998). Whether two crimes constitute the same criminal act for double jeopardy purposes is determined under the elements test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.,* 284 U.S. at 304, 52 S.Ct. 180. The Supreme Court has noted that, "[e]ven if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown v. Ohio,* 432 U.S. 161, 166, n. 6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The essence of a conspiracy offense is in the agreement to commit a crime, which is different from the commission of the substantive offense itself. *United States v. Medina,* 992 F.2d 573, 588 (6th Cir.1993). A substantive

crime and conspiracy to commit that crime are not the same offense for purposes of double jeopardy, even if based upon the same underlying incidents. *Id.* at 588.

■ The essential elements of the crime of conspiracy are that the alleged conspiracy existed, the defendant willfully became a member, and one of the conspirators knowingly committed at least one alleged overt act in furtherance of some object or purpose of the conspiracy. *United States v. Ross,* 190 F.3d 446, 450 (6th Cir.1999). Smith was charged in this second case with the substantive offense of committing a bank robbery or extortion with a dangerous weapon under 18 U.S.C. § 2113(d) and bank robbery with forced accompaniment, along with aiding and abetting. The facts litigated in the first case involved, in part, the bank robbery in Clarksville, the subject matter of this second case. *See Smith,* 320 F.3d at 650–52. Because a substantive crime and a conspiracy crime are not the same, and the government may use the same evidence in an earlier proceeding. Smith's right to be free from a subsequent prosecution on the same offense has not been violated.

### 2. Sentencing

Smith also argues that his sentencing in the second case constituted double jeopardy because it was based on the same facts that were used to sentence him in the first case. The Supreme Court has rejected the double jeopardy argument related to sentencing proceedings. *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *United States v. Maney,* 226 F.3d 660, 667 (6th Cir.2000).

Smith further argues that with regard to his sentencing the doctrine of collateral estoppel should be applied. The Fifth Amendment incorporates collateral estoppel. *See United States v. Johnson,* 697 F.2d 735, 739 (6th Cir.1983) ("[*Ashe v.*

*Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) explained that] where the prosecution seeks to relitigate issues decided in the defendants favor in a prior criminal trial, both collateral estoppel and the fifth amendment double jeopardy clause prohibit the prosecution of the defendant for offenses arising out of the same transaction involved in the first trial."). Whether collateral estoppel applies to determinations made in sentencing proceedings is not settled:

> What is unclear, both in the Sixth Circuit and in the other Circuits, is the question presented by this case: whether a defendant can invoke the doctrine defensively in regard to a determination made by a judge in a prior sentencing-particularly where that determination is legal and not factual.

*United States v. Roberts,* 59 Fed.Appx. 86 (6th Cir.2003)(unpublished disposition). *See also United States v. Salemo,* 81 F.3d 1453, 1464 (9th Cir.1996)(allowing the possibility of defensive collateral estoppel, but refusing to apply it where one district court refused to apply an upward departure, but another district court-looking at the same facts-did apply an upward departure because of the inability to appeal the first denial deprived the government of full and fair opportunity to litigate the issue); and *United States v. Rush,* 840 F.2d 580, 582 (8th Cir.1988)(considering the possibility of defensive collateral estoppel where the defendant had not been sentenced under the Armed Career Criminal Act in a prior federal conviction, even though he had the requisite predicate offenses, but in the second conviction he was sentenced under that Act, the second court holding that the doctrine did not apply because there was no evidence that the prior federal court had known of the predicate offenses). We likewise find it unnecessary to determine whether collateral estoppel

applies in the context of sentencing hearings because, even if it does, collateral estoppel did not preclude the district court from determining the criminal history category and enhancements challenged by Smith.

■ In this case, Smith was assigned a criminal history category II, while in the conspiracy case he has been assigned a criminal history category I. The presentence investigation report in this case included a 1988 offense for possession of marijuana for which Smith was sentenced to six months in a workhouse. (J.A. at 267) This offense was not included in the computation of the criminal history category in the conspiracy case. (J.A. at 258J–258K) There is no evidence that the district court in the conspiracy case even knew of the 1988 offense. Collateral estoppel does not apply because there is no evidence that the district court in the conspiracy case decided the same issue present in this case when computing the criminal history category.

■ Smith received a six-level enhancement in this case for placing a pistol to the head of one of the victims. He claims that he received only a five-level enhancement for identical conduct in the conspiracy case. The six-level enhancement in this case was given under § 2B3.1(b)(B) of the United States Sentencing Guidelines ("U.S.S.G.") for "using" a firearm, which was described as holding a gun to the hostages' heads. (J.A. at 266) The five-level enhancement in the conspiracy case was computed under § 2B3.1(b)(C) for "brandishing or possessing" a weapon, which was described as Smith being "in possession of a firearm during the commission of the offense." (J.A. at 258H) There is no indication that the six-level enhancement under § 2B3.1(b)(B) was considered in the conspiracy case. Without proof that the issues determined in the two cases were identical or that the issue in this case was even litigated in the conspiracy case, collateral estoppel does not apply.

■ For the same reason, collateral estoppel does not apply to Smith's final challenge to his sentence. In this case, the district court imposed a two-level enhancement under U.S.S.G. § 3B1.4 (using a minor to commit a crime) when no such enhancement was imposed in the conspiracy case. In his reply brief. Smith claims that this issue was contested in the conspiracy case, but that the district court opted not to impose the enhancement. There is no reference to any evidence in the record to support this assertion. In fact, a review of the record shows that this enhancement was not litigated in the conspiracy case. The presentence investigation report in the conspiracy case does not reference it. In addition, Smith's objection to the presentence investigation report in this case states that the government did not object to the PSI's failure to include this enhancement in the report for the conspiracy case, and did not argue its application. Because the issue was not litigated in the conspiracy case, the district court was not precluded from applying an enhancement under § 3B1.4 in this case. Although we assume, without deciding, that collateral estoppel can apply to sentencing, it is clear that Smith's claim will not succeed.

C.  Downward Departure

■ The standard of review for sentences imposed under the U.S.S.G. is abuse of discretion. *United States v. Hunter*, 993 F.2d 127, 130 (6th Cir.1993). Smith claims that the trial court erred in failing to depart downward because of sentencing disparities between his co-defendants in this case and in the first case. This court may not review a district court's decision not to depart below the guidelines

range unless a district court mistakenly believes it lacks the legal authority to do so. *United States v. Rudolph,* 190 F.3d 720, 722 (6th Cir.1999). It is clear that the trial court denied Smith's downward departure motion on the merits and not because the trial court had no authority to do so. This court therefore cannot review the denial of the motion to depart downward.

D. Enhancement

■ Smith's guideline offense level was enhanced by two under U.S.S.G. § 3B1.4 for use of a minor in the commission of the offense. Section 3B1.4 increases the offense level by two if a defendant "used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." The trial court found that Pierce's minor son was used "to respond to his mother's telephone call and told the child to not indicate that anything was wrong and he used the child to lure the mother to the house, and it's very appropriate that that two-level enhancement be used." (J.A. 501)

The trial court's factual finding is not clear error. Section 3B1.4 clearly states that if a minor is used to "assist in avoiding detection of the offense" then enhancement is appropriate.

### III.

We find that the trial court did not abuse its discretion in giving a modified *Allen* charge. Double jeopardy does not bar the second prosecution and sentencing against Defendants. The trial court did not err in enhancing Defendants' sentence. We affirm the Judgments against Nichols and Smith.