NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0077n.06

No.  08-5985

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | **Feb 04, 2010** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| ERNEST LEROY JONES, | ) | THE MIDDLE DISTRICT OF |
|  | ) | TENNESSEE |
| Defendant-Appellant. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

Before:  GUY, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Ernest Leroy Jones appeals his conviction for bank robbery. He argues, among other things, that the district court should have granted his motion to suppress and that the court's *Allen* charge was improper.  We reject all of his arguments, and affirm.

I.

On the morning of January 9, 2006, a man wearing a ski mask and brandishing what appeared to be a long gun wrapped in a white plastic bag robbed a U.S. Bank branch in Nashville, Tennessee. A teller surrendered $3245, including bait money whose serial numbers had been logged by the bank for identification.  After the robber fled, bank employees triggered an alarm.

The police arrived and interviewed several witnesses.  The tellers described the robber as a short, small-framed African-American male, between 45 and 55 years old, and wearing black

clothes. The bank's assistant manager reported seeing a man matching that description pacing the parking lot before the bank opened. Another witness said a maroon Pontiac Bonneville had been parked near the bank prior to the robbery, but that the car was gone by the time the police arrived. The officers promptly located a matching vehicle in the parking lot of a nearby motel. The car was licensed to Ernest Jones, who had checked into the motel that morning. The officers began surveillance. They shortly apprehended Jones—who matched the robber's description except for his clothes—when he left his motel room and approached the vehicle. Through the rear windows of the Bonneville, officers saw what appeared to be a long gun covered in a white sheet or bag.

Officer Kevin Carroll arrived at the motel shortly thereafter. According to Carroll, he advised Jones of his *Miranda* rights, which Jones orally acknowledged and waived. Carroll and Detective Charlie Harris then interrogated Jones. According to the officers, Jones at first denied robbing the bank but then claimed to have visited a friend nearby. Jones later admitted the robbery and said he taped sticks and a crushed plastic bottle together to resemble a long gun. He also said that, after he left the bank, he stopped to buy crack cocaine and then returned to the motel. He said the remainder of the money was under a pillow in his motel room. Jones gave written consent for the police to search his room and car. When the police searched his car, they found the fake gun and a ski mask. They also found $2415 and some crack cocaine in Jones's room. The money included bait bills from the bank.

Jones disputes this account in several respects. He alleges that Carroll never gave him his *Miranda* warnings, that he did not admit to the robbery, and that he consented to a search of only the motel room and not the car. He also alleges he was impaired from smoking crack cocaine and thus

incapable of consenting to a search or waiving his rights. Based on these allegations, Jones filed motions to suppress his statements and the fake gun. The district court held an evidentiary hearing at which Jones testified. At its conclusion, the court found Jones to be incredible and denied his motions.

Jones was thereafter tried before a jury. After four hours of deliberations, the jury notified the judge that it was deadlocked, and requested instructions. The judge told the jury to continue deliberating. Ninety minutes later, the jury again contacted the judge. This time, the judge gave a supplemental instruction to the jury, over Jones's objection. Less than an hour later, the jury returned a guilty verdict. The court thereafter sentenced Jones to 100 months' imprisonment.

This appeal followed.

II.

A.

Jones challenges the court's denial of his motions to suppress. We review the court's legal conclusions de novo. *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008). We review its factual findings for clear error, considering the evidence in the light most favorable to the government. *Id.* at 536-37. In doing so, we afford "great deference to the district court's credibility determinations[.]" *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003).

A credibility contest is precisely what the suppression hearing presented here. The district court found that Detective Harris and Special Agent Brett Curtis won that contest. Consequently, the court found that Jones understood his *Miranda* rights and waived them, and that he consented to a search of his motel room and car.

Jones now challenges those findings based upon testimony later elicited at trial. Specifically, Officer Carroll testified at trial that Detective Harris had not sat in the back seat of the police cruiser with Jones, whereas at the suppression hearing, Harris testified that he had. Jones says this discrepancy undermines the court's finding that Harris's testimony at the suppression hearing was credible. The court found the discrepancy to be of "little significance," however, given that Carroll's testimony corroborated Harris's "on the critical issues[.]" The court also reiterated that Jones himself had not been credible. On this record we see no basis to question any of those findings. The district court properly denied the motion to suppress.

B.

Jones next challenges the district court's denial of his motion for a new trial. We review that denial for an abuse of discretion. *See United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). Jones argues that Carroll's testimony, described above, was newly discovered evidence that would have caused the court to grant his motion to suppress. But the court itself denied Jones's post-trial motion to suppress based on this testimony, which defeats the argument on its own terms. Moreover, the testimony was not newly discovered by the time Jones filed his new-trial motion, ten months after trial. The motion was therefore untimely. *See* Fed. R. Crim. Pro. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict"). The district court did not abuse its discretion in denying the motion.

C.

Jones also challenges the district court's decision to give the jury an *Allen* charge. *See generally Allen v. United States*, 164 U.S. 492, 501 (1896). We review that decision for an abuse of discretion. *United States v. Cochran*, 939 F.2d 337, 340 (6th Cir. 1991).

Jones argues that the district court erred by waiting until the jury had notified the court for the second time that it could not reach a verdict. He relies on *United States v. Tines*, 70 F.3d 891, 896 (6th Cir. 1995), for the proposition that a delay in giving an *Allen* charge increases the charge's coercive effect. But *Tines* actually says that "the possibility of coercion is reduced if the charge is given early rather than after *days* of deadlocked deliberations." *Id.* (emphasis added). Here, the jury had only deliberated for about five hours on a single day before the court gave the charge. That is not an extensive delay. Moreover, we have approved the issuance of an *Allen* charge after a jury's second impasse where the jury had deliberated for a total of about seven hours across two days. *See United States v. Roach*, 502 F.3d 425, 439-40 (6th Cir. 2007). We conclude, therefore, that the district court did not abuse its discretion with regard to the timing of the charge here.

Jones also argues that the charge's language was improperly coercive. It is true that the district court did not use the Sixth Circuit Criminal Pattern Jury Instruction, for which we have expressed a "strong preference[.]" *See United States v. Clinton*, 338 F.3d 483, 488 (6th Cir. 2003). But *Clinton* also noted that the pattern instruction "is not the only instruction a district court may use." *Id.* at 490.

So we turn to the particulars of this charge. It provides in relevant part:

> If a substantial majority of your number are for a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression upon the minds of the others.
>
> On the other hand, if a number of you are in favor of an acquittal, the rest of you should ask yourselves again and most thoughtfully whether you should accept the weight and sufficiency of evidence which fails to convince your fellow jurors upon a reasonable doubt.

Jones contends this language asked only minority jurors to reconsider their views. We reject the contention. By its plain terms, the charge tells conviction-minded jurors to reconsider their views if even "a number of you"—and not only a majority—favor acquittal.

Jones next contends that the charge failed to admonish minority jurors not to acquiesce to other juror's views. But the charge so admonished all the jurors. It provided:

> Remember at all times that *no juror* is expected to give up an honest belief he or she may have as to the weight or effect of the evidence. But remember also that after full deliberation and consideration of the evidence in this case, it is your duty to agree upon a verdict if you can do so without surrendering your honest belief.

(Emphasis added.) So we reject this contention as well.

Jones next contends that the charge "improperly directed the jury to consider the external effects" of the jury's deadlock and that the court "effectively improperly told the jurors that they were the only ones who could decide the case[.]" (Jones's Br. at 34-35.) In relevant part, the charge provided:

> This is an important case. This trial has been expensive in terms of time, effort, and money to both the defense and the prosecution. And the Court has set aside a period of time to dedicate to this case.
>
> If you should fail to agree on a verdict and if the case is tried again, there's no reason to believe that another trial will be tried in a better way or more exhaustively than it has been tried before you. Any future jury must be selected in

the same manner and from the same source as you were chosen. And there's no reason to believe that the case could ever be submitted to 12 men and women more conscientious, more impartial, or more competent to decide; or that more or clearer evidence could be produced.

We have considered similar language in two prior cases. In *Clinton*, the charge provided:

The trial has been expensive, and preparation time and effort are difficult for both the defense and the prosecution. If you should fail to agree on a verdict as to any one count, or counts, the case is left open and undecided as to those counts. And like all cases, it will still need to be disposed of at some point in time.

338 F.3d at 485. There, we found the reference to trial expense and effort "troubling," but held that it did not render the charge coercive. *Id.* at 490.

In contrast, in *United States v. Scott*, 547 F.2d 334 (6th Cir. 1977), the charge provided:

Next week I will be in Grand Rapids and we will be trying a civil case that has been filed and pending for four years. Four years people are waiting to have a case heard, and that's all I do, night and day, day after day, day after day, cases people have been waiting for. The criminal cases have a priority, and so it gets to be another two or three days. Well, it does get to be that. Instead of three days of time devoted to a case, it gets to be six days for another Jury.

Now, I am only saying that so that you should be mindful of these things. I say, it's very important to the defendant, very important to the Government, if you can possibly agree.

*Id.* at 338. We held that charge coercive, reasoning that it "could be understood by the jury as an admonishment to reach a verdict in order to get the case out of the way, for the sake of a harried judge and long-suffering civil parties." *Id.* at 337.

This case is closer to *Clinton* than *Scott*. It would have been better to omit the charge's reference to trial time and expense. Viewed in the context of the charge as a whole, however, the

reference was not unduly coercive. The district court did not abuse its discretion in crafting the charge here.

D.

Jones argues that the government violated its duty of disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide alleged statements or reports made by Officer Coleman Womack, who apprehended him. To establish a *Brady* violation, Jones must show that the government suppressed material evidence that is favorable to him. *See United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). Here, Jones has not shown that the alleged evidence even exists, much less that it would have been favorable or material.

Jones also argues that the government was obligated by the Jencks Act, 18 U.S.C. § 3500, to produce Womack's alleged statements or reports. But such an obligation arises only after a government witness testifies on direct examination. *See id.* para. (a). The government did not call Womack as a witness. So we reject this argument as well.

Finally, Jones argues that the government violated the Confrontation Clause by failing to produce Womack as a witness. That clause protects a defendant's right to confront the witnesses against him, by barring, for example, admission of testimonial statements made without opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). But Jones has not identified any such statements—by Womack or anyone else—that were admitted at trial. This argument, therefore, is meritless.

The district court's judgment is affirmed.