**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hayden Louis HARRIS, Thomas Benton Harris et al., Defendants-Appellants.**

**Nos. 17467, 17782.**

United States Court of Appeals Sixth Circuit.

March 8, 1968.

H. H. Gearinger, Chattanooga, Tenn., (Court appointed for appellant Donald Ray Harris).

John H. Reddy, U. S. Atty., Thomas A. Williams, Asst. U. S. Atty., Chattanooga, Tenn., for appellee.

Before O'SULLIVAN, McCREE, and COMBS, Circuit Judges.

COMBS, Circuit Judge.

These appeals, consolidated for hearing in this Court, are from separate convictions of the several defendants-appellants for conspiracy to violate, and the substantive violation of, the laws relating to the manufacture of whiskey. 18 U.S.C. § 371; 26 U.S.C. § 5601(a) (4).

Case No. 17,467 in this Court is an appeal from judgments of sentence imposed on Hayden Louis Harris and Thomas Benton Harris. After an initial mistrial in the district court, the Harrises and others not here involved were again brought to trial. The two Harrises were convicted on a count charging conspiracy to violate the law relating to non-tax paid whiskey, and another count charging that they aided and abetted each other in carrying on the business of distillers without giving bond as required by law. Hayden Louis Harris received a sentence of three years imprisonment and Thomas Benton Harris received a sentence of two years imprisonment on the conspiracy count; they each received a two-year

probated sentence on the other count to commence at the expiration of their sentences of imprisonment.

In case No. 17,782 in this Court, Hayden Louis Harris, Thomas Benton Harris, George F. Bowers, Donald Ray Harris and others not here involved were tried under a separate indictment charging them with (1) conspiracy, covering another time period from that charged in the first case; (2) aiding and abetting in the possession of certain stills; (3) possession of a still; and (4) aiding and abetting in carrying on the business of a distiller without giving bond. All of the defendants were acquitted on the conspiracy count; they were all convicted on the other three counts. Sentences were imposed as follows:

Hayden Louis Harris, four years consecutive to the sentences imposed in the first case;

Thomas Benton Harris, three years consecutive to the sentences imposed in the first case;

George F. Bowers, two years; and

Donald Ray Harris, two years.

■ In both cases error is charged in that the Government was allowed to prove overt acts of the charged conspiracy without first presenting independent proof of the existence of the conspiracy. We find no error on this score. The order of proof in a conspiracy case is left to the discretion of the trial judge. United States v. Shipp, 359 F.2d 185 (6th Cir. 1966); Strauss v. United States, 311 F.2d 926 (5th Cir. 1963), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412; United States v. Copeland, 295 F.2d 635 (4th Cir. 1961); Cwach v. United States, 212 F.2d 520 (8th Cir. 1954).

■ The question of sufficiency of the evidence is raised in both cases. Witnesses for the Government testified that they had observed the appellants operating the stills involved, loading onto vehicles beverage cans of the type customarily used for transporting alcohol, driving away in the vehicles, returning with the same vehicles, and unloading empty cans and bags of sugar. The distillery was located in the general vicinity of Hayden Louis Harris' home and men who worked at the stills were seen coming from the direction of his home. A truck used in transporting the product of the distillery was seen several times in Hayden Louis Harris' driveway. This and other evidence presented by the Government is clearly sufficient to sustain the judgments of conviction.

■ A claim of double jeopardy is asserted in the second case on the ground that if there was a conspiracy it was a continuing one for which some of the parties had already been tried in the first case. It is also contended that the substantive offenses charged in the second indictment were of the same character as those charged in the earlier indictment. The district judge found, and we think properly so, that the indictments charged two separate and distinct conspiracies. The conspiracy charged in the second indictment covered a different period of time from that alleged in the first indictment and, although both indictments had some defendants in common, the second one named additional parties as defendants. Moreover, none of the appellants was convicted of conspiracy in the second case; they were all acquitted of this charge by the jury. Any possibility of prejudice to appellants by the inclusion of the conspiracy count in the second indictment was vitiated by the jury's verdict.

■ The substantive offenses charged in the second indictment were alleged to have occurred at a different time and under different circumstances from those charged in the earlier indictment. It is noted, too, that the second indictment was returned before appellants were brought to trial on the first indictment and there was no motion for consolidation of the cases for trial as is permitted by Rule 13, Federal Rules of Criminal Procedure. The claim of double jeopardy is not well taken.

A more difficult question is presented in regard to the judge's instructions in

the first case (No. 17,467). At the conclusion of the evidence, the judge instructed the jury and it retired to the jury room at 11:40 A.M. Later in the day the jury returned to the courtroom and requested additional instructions on the meaning of the word "conspiracy." The judge complied with this request and the jury again retired. At 4:55 P.M., the jury returned to the courtroom and the foreman announced, "We feel at this time that we are deadlocked." The judge then stated to the jury:

"We're beyond the normal time for adjournment and we will adjourn at this time, but I think it would be proper to request the jury to come back tomorrow and consider some further this verdict, and I will want at that time to give some further suggestions and some further instructions to the jury about the case, but well, rather than comment further on it this evening, we will just adjourn court at this time but for reasons which I will point out to you in the morning, it is important, I think, that we attempt to arrive at a decision in the case. You can appreciate the fact that the trial of these cases is expensive and burdensome to both parties in the lawsuit. This case has now taken three days to try and if you ladies and gentlemen are unable to decide it, it means that we're going to have to get twelve other men and women who have the same qualifications that you have; they certainly would have no more ability or dedication or intention or purpose to decide this lawsuit than you ladies and gentlemen. We can never hope to get a jury who will be any more competent to decide this lawsuit or any more dedicated to try this lawsuit and there's no reason to believe that the lawsuit can ever be tried any differently from what it was tried this time, so under all the circumstances I think it is proper that we should ask that you come back tomorrow, and, of course we'll have certain other instructions that I will want to give you at

that time and then continue your deliberations tomorrow."

No objection was made by counsel to these remarks. After the jury had left the courtroom, the judge inquired if counsel had objection to the court further advising the jury that this was a second trial of the case and "otherwise urge upon the jury the importance of arriving at a verdict in the case." Counsel for the Government voiced no objection. Counsel for the appellants said, "We would welcome it." The judge then stated, "Well, I think in addition to other instructions in the morning, the Court will want to advise the jury of that and emphasize the importance of this case being decided."

The next morning the court gave these additional instructions:

"Ladies and gentlemen, the Court certainly appreciates the time and effort that you have devoted to the trial of this case. This makes the fifth day now that you ladies and gentlemen have been called upon to come to this court room to participate in the proceedings of the trial of this lawsuit. I appreciate the fact that yesterday you spent some four hours or more in deliberation upon this case and that it was an hour after usual time for adjournment that you advised the Court that you had been unable to arrive at a verdict in the case. I did feel it proper, however, to request that you come back this morning to make a further effort to decide this lawsuit.

"One reason that I requested that you come back this morning is the fact that this case has been tried one time previously. The jury in that trial was unable to agree upon a verdict, and if you ladies and gentlemen are unable to decide this lawsuit, this lawsuit must be decided—it must be decided at some time by some jury, which just means that if you are unable to decide this lawsuit that we're going to have to declare a mistrial in this case and we will have to then call in twelve more jurors and try this case over again.

"Let me just suggest a few things that I should like for you to consider. Prehaps in the course of your deliberations you've been concentrating so upon the evidence of the case that you may not have thought that these matters also—I think they're appropriate thoughts for you to bear in mind as you deliberate this case. In the first case, this is an important lawsuit; every lawsuit is important. It is important to the parties involved. As a matter of fact, to the parties involved in every particular lawsuit, that's the most important lawsuit that any jury will be called upon to decide. In addition to that, the trial of this case has been an expensive trial and every trial is expensive and burdensome upon your Government and is certainly expensive and burdensome upon the defendants. They have had to be here and the Government has had to be here, just as you ladies and gentlemen have had to be here, and they have had to provide counsel and to the expense of producing witnesses and trying this lawsuit upon two occasions now. Like all cases, this case must be disposed of and decided at some time. There appears to be no reason to believe that another trial would not be just equally as expensive or equally as burdensome as the trial that we have just been through. Nor does there appear to be any reason to believe why the case would ever be tried any better, any more exhaustively, any more understandably or completely than it has been tried before you ladies and gentlemen. Any jury in any future trial would be selected in exactly the same manner that you ladies and gentlemen have been selected and certainly there is no reason to believe that we will ever be able to get twelve men and women who are more conscientious, who are more capable, and who are more dedicated to decide this lawsuit than we now have in the jury box.

"Now, of course, these matters I'm sure suggest themselves to you ladies and gentlemen when you reflect upon them and the only reason I mention them is because they may have escaped your attention in the fact that you were fully occupied in reviewing the evidence in the trial of this case. They are matters which along with others, and perhaps more obvious ones, remind us how important it is, how desirable it is, that you unanimously agree upon a verdict of guilty or not guilty as the evidence may warrant, if you can do so without violence to your individual judgment.

"Now, of course, this Court does not want and would not—it would be highly improper for any jury to give up a conscientious conviction merely to arrive at a unanimous verdict in the case. However, it is your duty as jurors to consult with one another and deliberate with a view to arriving at a unanimous verdict if you can do so without violence to your individual judgment. Each of you, of course, must also decide this case by yourself but you should only do so after having considered the evidence and having considered carefully and respectfully the views of your fellow jurors. It is not an easy thing, you know, to bring twelve minds to a unanimous result— each of you come from a different background, you've had different experiences in life, and you are impressed more or less in a different manner by the evidence that you may hear. Accordingly, you should examine the questions that have been submitted to you with complete candor and frankness and with proper deference for each other's opinion.

"If much the greater number of you should be for conviction as to any particular defendant or as to any particular count, then each dissenting juror ought to consider carefully whether or not his or her doubt is a reasonable doubt since it makes no effective impression upon the minds of so many equally honest and equally intelligent fellow jurors who of course bear the same responsibility for deciding this

lawsuit and have heard the same evidence with the same attention and with an equal desire to arrive at the truth.

"On the other hand, if a majority or even a lesser number of you are for acquittal as to any defendant as to any count, then the other jurors ought to seriously ask themselves again whether or not they have reason to doubt the correctness of their judgment, which is not concurred in by many of their fellow jurors, and whether they should not distrust the weight or sufficience[y] of evidence which fails to convince the minds of several of their fellow jurors to a moral certainty or beyond a reasonable doubt.

"Ladies and gentlemen, if you find from the evidence in this case that any defendant is guilty as charged in any particular count beyond a reasonable doubt, you should return a verdict of guilty as to that defendant and as to that count. If, on the other hand, if you have a reasonable doubt as to the guilt of any defendant as to any particular count, then it's your duty to return a verdict of not guilty as to that count and as to that defendant. Bear in mind again that the Court is not requesting—as a matter of fact the Court is instructing you to the contrary that no juror should give up a conscientious conviction as to the weight and effect of the evidence in the case after having carefully reviewed and carefully considered and carefully reconsidered the views of his fellow jurors, but it is important, and I'm sure you can appreciate that this lawsuit be decided if it can be decided in good conscience, and this Court is again urging that you attempt to do just that. If you can decide this lawsuit in good conscience, the Court would urge you to do so.

"Very well, if you ladies and gentlemen will take this case and consider some further—I'm not suggesting that you deliberate any particular length of time; I'll leave that entirely up to your discretion. I would urge you to carefully review the evidence in the case and carefully review your own opinions and enter your deliberations this morning with a willingness to change your own viewpoints if you are persuaded by the views of your fellow jurors to do so, bearing in mind at all times, of course, the instruction that you should not give up a conscientious conviction merely to arrive at a unanimous verdict.

"All right, if you will please, retire and consider your verdict some further and then advise the Court as to your progress or as to the verdict in the case. I will return to you at this time, through the officer, the verdict form and the indictment in the case. Of course, if you need any additional instructions—I might inquire this morning—are there any further instructions with regard to matters the Court has heretofore instructed you that might be of any assistance to you, bearing in mind, of course, that the matter of determining the facts in the case and the weight and sufficience[y] of the evidence is entirely a matter for the jury and a matter upon which the Court would not and could not properly inject itself. Is there any question of law that any of you may have that would be of any help? All right, if you will please, retire and consider some further your verdict and notify the Court."

After the jury had retired, counsel for appellants moved the court to declare a mistrial and, in the alternative, requested that the court direct a verdict of acquittal upon the inability of the jury to reach a verdict. Counsel for appellants stated, "we make this motion at this time, this objection, only to the last instructions Your Honor gave the jury in that it might under the theory of these cases result in the forced or urged conviction of one of the five defendants."

It is insisted on this appeal that the supplemental instructions were coercive. Counsel for both the Government and the appellants rely on Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41

L.Ed. 528 (1896). In that case the United States Supreme Court approved the giving of supplemental instructions to a jury which had been unable to agree. The instructions there approved, usually referred to as the "Allen charge", have been said to approach "the ultimate permissible limits" for a verdict-urging instruction. Green v. United States, 309 F.2d 852, 855 (5th Cir. 1962); Powell v. United States, 297 F.2d 318 (5th Cir. 1961); United States v. Rogers, 289 F. 2d 433, 435 (4th Cir. 1960).

In *Green* the instruction was found to be coercive when the court added to the *Allen* charge the statement that minority jurors should distrust their judgment because the majority "will have better judgment." In *Rogers* an instruction was held to be coercive because the court omitted the admonition that each juror should abide by his own conscientious decision. In Stewart v. United States, 300 F. 769 (8th Cir. 1924), an instruction was disapproved which included a statement that no juror should stand by his blind determination but should listen to those arguments supported by greater numbers.

In recent cases such as Burroughs v. United States, 365 F.2d 431 (10th Cir. 1966); Thaggard v. United States, 354 F.2d 735 (5th Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301; and Williams v. United States, 119 U.S.App.D.C. 190, 338 F.2d 530 (1964),

the original version of the *Allen* charge has been the subject of criticism.

We have no criticism of the *Allen* charge as such. It has been approved by this Court, United States v. Barnhill, 305 F.2d 164 (6th Cir. 1962), cert. denied, 371 U.S. 865, and by the courts of all other circuits,[1] with varying degrees of reluctance. We are of the opinion however that, as has repeatedly been pointed out by other courts, it approaches the limits beyond which a trial court should not venture in urging a jury to reach a verdict.

The main criticism of the instructions here is in regard to the judge's statements that "this lawsuit must be decided—it must be decided at some time by some jury, which just means that if you are unable to decide this lawsuit that we are going to have to declare a mistrial and we have to then call in twelve more jurors and try this case again."

Criticism is also directed to the judge's remarks in regard to the expense and burden of conducting a trial.

■ We will dispose of the second criticism first. The judge's statement in regard to the expense and burden of conducting a trial is an extension of the *Allen* charge and, in our judgment, a questionable extension, especially where this factor is unduly emphasized. We are of the opinion, however, that these remarks were invited and, consequently, waived by appellant's counsel. When the jury returned to the courtroom at

1. 1st Circuit: Boston & M. R. R. v. Stewart, 254 F. 14 (1918);
2nd Circuit: United States v. Kahaner, 317 F.2d 459 (1963), cert. denied, 375 U.S. 836, 84 S. Ct. 74, 11 L.Ed.2d 65;
3rd Circuit: Shaffman v. United States, 289 F. 370 (1923);
4th Circuit: Lias v. United States, 51 F.2d 215 (1931), aff'd 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505;
5th Circuit: Huffman v. United States, 297 F.2d 754 (1962), cert. denied, 370 U.S. 955, 82 S.Ct. 1605, 8 L.Ed.2d 820;
7th Circuit: United States v. Furlong, 194 F.2d 1 (1952), cert.

denied, 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352;
8th Circuit: Bowen v. United States, 153 F.2d 747 (1946), cert. denied, 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611;
9th Circuit: Shea v. United States, 260 F. 807 (1919);
10th Circuit: Mills v. Tinsley, 314 F.2d 311 (1963);
D.C.Circuit: Bord v. United States, 76 U.S.App.D.C. 205, 133 F.2d 313 (1942), cert. denied, 317 U.S. 671, 63 S.Ct. 77, 87, L.Ed. 539.

the close of the first day's deliberation, the judge included the following in his remarks to it: "You can appreciate the fact that the trial of these cases is expensive and burdensome to both parties in the lawsuit." No objection was taken to these remarks. Moreover, it was at this point that appellants' counsel affirmatively agreed that additional instructions might be given to the jury. It could reasonably have been anticipated in view of what the judge had already said that if additional instructions were given they would include a repetition of the statement in regard to the expense and burden of a retrial of the case. We regard this as a waiver. It is also clear that counsel agreed that the jury should be told that this was a second trial of the case.

■ It is suggested, although not argued, in the Government's briefs that, since appellants' counsel agreed to the giving of supplemental instructions, appellants are precluded from objecting to the substance of those instructions. We do not agree. Counsel had the right to assume when he agreed to the giving of supplemental instructions that the judge would not go beyond the conventional version of the *Allen* charge. We note, too, that immediately after the instructions were given, objection was noted by counsel for appellants on the stated ground that the instructions might "result in forced or urged conviction of one of the five defendants." We find no waiver of error to the supplemental instructions except as to the remarks about the burden and expense of conducting a trial.

■ It is insisted by appellants that the statement "this lawsuit must be decided—it must be decided at some time by some jury" is an unauthorized extension of the *Allen* charge and is calculated to have a coercive effect on the jury. We agree. In the first place, the statement is not completely accurate. The possibility of disagreement by the jury is a part of the jury system. Green v. United States, 309 F.2d 852, 856; Williams v. United States, 119 U.S.App.D.C.

190, 338 F.2d 530, 533; Thaggard v. United States, 354 F.2d 735, 740 (concurring opinion). It is conceivable, of course, that in a given case it might never be possible to obtain a unanimous verdict of either acquittal or guilt.

The constitutional safeguards of trial by jury (Article III, Section 2, Clause 3, and the Sixth Amendment) have always been held to confer upon every citizen the right—except in impeachment cases—to remain free from the stigma and penalties of a criminal conviction until he has been found guilty by a unanimous verdict of a jury of twelve of his peers. The possibility of disagreement by the jury and the lack of a unanimous verdict is a protection conferred upon a defendant in a criminal case by the Constitution. For the judge to tell a jury that a case must be decided is therefore not only coercive in nature but is misleading in fact. It precludes the right of a defendant to rely on the possibility of disagreement by the jury. It was said in Keerl v. State of Montana, 213 U.S. 135, 138, 29 S.Ct. 469, 470, 53 L.Ed. 734 (1909) that both the Fifth and Fourteenth Amendments invest courts of justice with the authority to discharge a jury from giving any verdict whenever, in the court's opinion, there is, after due time for deliberation, "a reasonable probability that the jury could not agree."

In Thaggard v. United States, 354 F.2d 735, 739, it was said that the *Allen* charge should be approved only so long as it "avoids creating the impression that there is anything improper, questionable, or contrary to good conscience for a juror to cause a mistrial."

In Jenkins v. United States, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965), the Supreme Court by per curiam held that an instruction was coercive where, after a jury was unable to agree after two hours deliberation, the court said to them, "You have got to reach a decision in this case."

In Burroughs v. United States, 365 F. 2d 431, an instruction was found to be

coercive where the court admonished the jury, after it had deliberated one hour and twenty minutes, to reach a decision within thirty-five minutes and, if they could not agree by that time, they would be recessed until the next morning. While the facts are not on all fours with this case, the language at page 434 in the *Burroughs* opinion is appropriate:

"When these admonitions are considered in their context, they are subject to the clear inference that the judge was unduly anxious to conclude the lawsuit, and we think it entirely reasonable to infer that the jury was aware of his anxiety. This type of verdict-urging on the part of the court tends to undermine the proper function of the common law jury system as contemplated by the Seventh Amendment. We must guard against any such subtle inroads. We think the charge in this case went beyond the permissible limits of the Allen charge * * *"

The vice in an extension of the *Allen* charge is that because of the court's insistence on a verdict a minority will surrender its conscientiously held opinions to the vote of the majority for the sake of agreement, as requested by the court. Although nothing in this record shows the balance which existed within the jury between acquittal and conviction, the existence of a delicate balance is indicated by the fact the jury had deliberated most of the preceding day without agreement. "The very failure of the jury quickly to reach a conclusion has been suggested as an indication of a balance so delicate that any error on the judge's part may turn the scales." United States v. Samuel Dunkel & Co., 173 F.2d 506, 511 (2nd Cir. 1949). A time gap of only a few minutes between the additional charge and the jury's decision, the jury having been deadlocked before the charge, was considered as demonstrating coercive effect in United States v. Rogers, 289 F.2d 433.

We think the supplemental instructions in this case go too far. A previous jury had failed to agree; this jury had reported itself as deadlocked; the supplemental instructions were given and within a short time a verdict was reached. It is a reasonable conclusion that the minority was influenced by the instructions to subordinate its will to the will of the majority.

We have given consideration to recent cases like Walsh v. United States, 371 F.2d 135 (9th Cir. 1967), cert. denied 388 U.S. 915, 87 S.Ct. 2130, 18 L.Ed.2d 1357; Fulwood v. United States, 369 F. 2d 960 (D.C. Cir. 1966), cert. denied 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996; and Thaggard v. United States, 354 F.2d 735, in which a modified version of the *Allen* charge has been approved. We are of the opinion however that the supplemental charge in this case, given under the circumstances then existing, was more coercive in nature than were the instructions in those cases. The charge here was prefaced by the statement that this was the second trial of the case and that another jury had failed to make a verdict. With this as a premise and with the firm admonition from the court that the case had to be decided at some time by some jury, it is not an unreasonable conclusion that the minority, already subjected to pressure from the majority, agreed in effect to majority rule. This is a risk a defendant is not required to take.

The modified version of the *Allen* charge included in the 1965 Edition of Mathes and Devitt, Fed.Jury Prac. and Instr., § 15.16, does not contain the statement that "this case must be decided." The statement there is, "If you should fail to agree on a verdict, the case is left open and undecided. Like all cases, it must be disposed of some time." There is a clear distinction between the statement "this case must be decided" and "it must be disposed of some time."

In *Walsh* the jury was merely told that it must try to reach a verdict. It is noted, too, that there was a strong dissent filed in the case. In *Thaggard* the charge stated that the case "must at some time be decided." The concurring opinion in *Thaggard* was in effect a dis-

sent. In *Fulwood* the statement was, "some jury some time will have the duty to decide this case, and I hope that you, as the jury in this case, will be able to decide this matter." The court concluded its opinion in that case by saying, "considerable work for this court would be eliminated if District Judges would consistently use a form of instruction plainly within Allen." It is noted that in none of the three cases last cited was the jury told that there had been a previous trial. It may well be argued that this is not sufficient basis on which to draw a distinction between those cases and the case before us. With this in mind, we hold that to the extent that *Walsh*, *Thaggard*, and *Fulwood* cannot be reconciled with the views herein expressed we decline to follow them.

In United States v. Barnhill, 305 F.2d 164, which has been cited as authority for the approval by this Court of the ·*Allen* charge, no objection was taken to the charge in the trial court. In fact, counsel for the defendant offered a supplemental instruction of his own which was given by the court. This Court held that, under the circumstances there shown, there was no plain error. Moreover, *Barnhill* was decided prior to Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957, and, if we read Jenkins correctly, the Supreme Court takes a dim view of any extension of the *Allen* charge which might be considered coercive.

What we have said in regard to supplemental instructions applies only to case No. 17,467, in which Hayden Louis Harris and Thomas Benton Harris are the only appellants. We find no error in Case No. 17,782, and it is noted that Hayden Louis Harris and Thomas Benton Harris received sentences of four years and three years, respectively, in that case. The sentences in case No. 17,782, will not be disturbed by our holding in the other case.

The judgment in case No. 17,782 is affirmed.

The judgment in case No. 17,467 is reversed and the case is remanded.