IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2013

**STATE OF TENNESSEE v. JEFFREY A. SIMMONS**

**Appeal from the Circuit Court for Warren County**
**No. F8245      Larry B. Stanley, Judge**

**No. M2012-01374-CCA-R3-CD**
**No. M2012-01223-CCA-R3-CD**
**Filed November 6, 2013**

The Petitioner, Jeffrey A. Simmons, was convicted of four counts of aggravated sexual battery and received an effective sentence of thirty-two years. At the hearing on his motion for new trial, which was denied by the trial court, the Petitioner claimed the ineffective assistance of Initial and Trial Counsel. The Petitioner later filed a petition for post-conviction relief, in which he alleged the ineffective assistance of Initial, Trial, and Successor Counsel. The post-conviction court granted partial relief in the form of a delayed appeal after it determined, contrary to this court's conclusion in State v. Jeffrey Simmons, No. M2007-01383-CCA-R3-CD, 2010 WL 27881 (Tenn. Crim. App. January 6, 2010), that the Petitioner had, in fact, filed a timely motion for new trial. The post-conviction court limited the delayed appeal to review of issues that were deemed waived by this court in the direct appeal. It dismissed the post-conviction relief petition reasoning that the ineffective assistance of counsel claims had been previously determined. In this consolidated appeal, the Petitioner argues that the post-conviction court erred by dismissing his petition for post-conviction relief.[1] Following our review, we conclude that the post-conviction court properly granted the Petitioner a delayed appeal for review of issues raised but not addressed in his direct appeal. Upon consideration of whether the trial court erred by instructing the jury after it appeared to be deadlocked, the only issue not reviewed by this court in the Petitioner's direct appeal, we affirm the judgment of the trial court. We additionally conclude that the post-conviction court erred in dismissing the post-conviction petition with respect to the Petitioner's claims of ineffective assistance of Successor Counsel. Accordingly, we reverse the post-conviction court's dismissal of the portion of the petition that alleged ineffective assistance of Successor Counsel and remand for an evidentiary hearing. In all other respects,

---

[1] On October 26, 2012, this Court granted the Petitioner's motion to consolidate his delayed direct appeal in Case No. M2012-01374-CCA-R3-CD, and the post-conviction court's dismissal of his petition for post-conviction relief in Case No. M2012-01223-CCA-R3-CD.

we affirm the post-conviction court's dismissal of the petition for post-conviction relief alleging ineffective assistance of Initial Counsel and Trial Counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Lauren Zechman-Denney, McMinnville, Tennessee, for the Defendant-Appellant, Jeffrey A. Simmons.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Finley, Senior Counsel, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; and Tom Miner, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

For a full understanding of the unusual posture of the matter before us, it is necessary to detail how the Petitioner's case unfolded following his convictions. On December 10, 2003, a sentencing hearing was conducted, and the Petitioner received an effective forty-eight-year sentence. On January 6, 2004, Trial Counsel filed a Motion for New Trial.[2] This motion raised several issues, including: the insufficiency of the evidence; the trial court's failure to sustain an objection to testimony of Ray Gilder pertaining to the Petitioner's marital problems; and sentencing. On July 13, 2004, a Supplemental Motion for New Trial was filed by Trial Counsel requesting re-sentencing of the Petitioner pursuant to Blakely. On March 23, 2005, a re-sentencing judgment as to each judgment of conviction was entered reflecting an effective thirty-two-year sentence.

Although there is no order by the trial court reflecting that the Petitioner was permitted to proceed pro se in the record on appeal, apparently, at some point after the Petitioner was re-sentenced pursuant to Blakely, the trial court allowed the Petitioner to proceed pro se. On April 11, 2005, the Petitioner, acting pro se, filed a thirty-eight-page typed "Motion to Strike All Prior Affidavits in Support of A Motion For A New Trial And To Replace Said Issues With the Following Affidavit In Support of Motion For A New Trial." There is no order from the trial court disposing of the Petitioner's April 11, 2005 motion in the record on appeal. Almost two years later, on January 8, 2007, the Petitioner,

---

[2] The record reflects that the Petitioner was represented at trial by two representatives of the Public Defender of the 31st Judicial District. We will refer to them, collectively, as Trial Counsel.

acting pro se, filed a "Tennessee Rules of Criminal Procedure Rule 33c Affidavit In Support of Defendant's Motion For New Trial and Notice of Newly Discovered Evidence." Within this motion, the Petitioner alleged twenty-five (25) grounds of ineffective assistance of Initial Counsel and Trial Counsel as well as prosecutorial misconduct.[3]

On January 16, 2007, the Petitioner, acting pro se, filed a "Motion For Funds To Hire An Investigator To Aid The Defendant In Proving Aggravated Perjury Against Five State Witnesses." The Petitioner also filed a Motion for Appointment of Co-Counsel, and in response, the trial court issued an order on February 22, 2007. Within the order, the trial court found no precedent for the appointment of co-counsel for a pro se defendant. It provided the Petitioner with the option to proceed pro se or waive his right to proceed pro se and have counsel appointed to his case. The Petitioner apparently chose the latter, and the trial court appointed Successor Counsel, who represented the Petitioner at the hearing on the motion for new trial.[4] In the same order, the trial court held in abeyance the previous pro se motions filed by the Petitioner until Successor Counsel could review them. The record does not contain any supplemental motions filed by Successor Counsel.

On May 29, 2007, the trial court conducted a hearing on the motion for new trial. The Petitioner and Trial Counsel testified at the hearing. At the beginning of the hearing, the trial court stated:

> There [have] been lots of pleadings. Some were a motion for a new trial, and some that were post convictions petitions. I am here today to hear anything that needs to be heard. Mr. Simmons indicated at one point that he included all of these issues together, and that is fine.

Successor Counsel, replied, "We can go forward with the Motion for New Trial. . . . [and] I will reserve any other issues we may have." Successor Counsel began by asking the Petitioner, "we are here today on a Post Conviction/ Ineffective Assistance of Counsel claim that you brought forward. Is that correct?" In response, the Petitioner said, "When you say Post Conviction, we have not even made it to the appellate stage. We have a Motion for New Trial."

---

[3] The record reflects that the Petitioner was initially represented at the preliminary hearing level by separate counsel. We will refer to her as "Initial Counsel."

[4] The record reflects that the Petitioner was represented by separate counsel at the hearing on the motion for new trial and on direct appeal. We will refer to him as "Successor Counsel."

The Petitioner then proceeded to testify, at length, regarding various issues. His initial complaint concerned the testimony of the victim at the preliminary hearing. He testified that "[i]n the midst of the preliminary hearing, after direct examination by the prosecution, my counsel, Ms. Peg Stewart, inquired about a fourth alleged incident that the alleged victim had stated during the prosecution, but in which the prosecution did not ask this alleged victim about." The Petitioner believed that had Initial Counsel not asked the victim about the fourth incident it would not have been included as the fourth count of the indictment.

The Petitioner also acknowledged that Initial Counsel filed a change of venue motion and had "in her possession newspaper articles that would support" a change of venue to another county. However, he essentially complained that trial court erred in denying the motion. Apparently, the original judge who heard the evidence supporting the motion said he would rule on it when the trial began. A different judge heard the trial, and no proof was presented by Trial Counsel supporting the motion. The Petitioner believed that had he been granted a change of venue, the result of the trial would have been different.

The Petitioner also testified that he underwent a psychiatric evaluation and was never permitted to review the results by Trial Counsel. He believed this affected the outcome of the trial because he provided the psychiatrist with list of alleged constitutional violations by state officials. He was not provided with copy of report and said that it was "all for nothing."

The Petitioner also said that he was "granted $15,000 to have all of the alleged victims in every case mentally evaluated." He testified that the purpose of evaluation was to assess "how that alleged victim changed her story from the time that she was interviewed to the time of trial." He complained that Trial Counsel failed to conduct the evaluations, which were "never taken care of." He believed that it "could have been a substantial defense at trial" based on suggestibility and indoctrination.

The Petitioner also testified that Jason Rowland, the investigator for the District Attorney General's Office, fabricated the information contained in the affidavits supporting the warrants in his case. The Petitioner said that he had done a significant amount of legal research and that he was, in fact, a legal clerk. He believed that "[t]he statements made in all of the affidavits of complaint were directly contradictory to the statements of the alleged victim." Based on the Petitioner's research, he believed every proceeding up to the indictment was invalid due to the fabricated warrants. He reasoned, "Since the bind over to the Grand Jury would be held invalid, the Grand Jury never had jurisdiction over the subject matter to hear any of the cases." In effect, he maintained that counts one through three of his convictions should be overturned based on the invalidity of the underlying warrants.

-4-

The Petitioner said that the statements in the affidavits were contradicted by the victim's testimony at the preliminary hearing. He specified the following statements: (1) Inv. Rowland claimed the offense was associated with a youth group and the victim denied any youth group members were present at time of offense; (2) Inv. Rowland claimed the Petitioner touched the victim on the vagina, while the victim claimed it was on her leg up to her private and back down her leg; which caused the State, at trial, to allege touching of her vagina.

The Petitioner acknowledged that he had given Successor Counsel a list of over two-hundred twenty-two (222) statements made during trial that he believed were inconsistent. He said he "condensed those down into sixty-six (66) topics of story changes that the alleged victim made prior to the trial." He said only forty-two (42) of these inconsistent statements were brought to the jury's attention. He believed that if all of the inconsistent statements were presented to the jury, it would have lessened the victim's credibility and resulted in an acquittal.

The Petitioner said that he did not testify at trial because he was not properly prepared to testify by Trial Counsel. He additionally stated that he was not allowed to review a video-taped statement, apparently taken of him at the time of his arrest. Because he did not remember everything he said in the video-taped statement, the Petitioner believed testifying without the benefit of previously viewing the video-taped statement would have resulted in inconsistent statements. He said that Trial Counsel violated his rights and told him that they would not represent him if he testified on his own behalf. The Petitioner testified that had he been properly prepared to testify, then he would have provided two alibi defenses in August of 1999 and December or January of 2000. He said that Trial Counsel failed to acknowledge or subpoena witnesses from a notebook which he compiled, including Dr. William Burnett who was associated with the $15,000 grant. He said that Trial Counsel also failed to investigate his alibi defense.

The Petitioner believed that Trial Counsel assisted the State in securing his convictions. He said that one of the most important issues in his case was whether the victim was awake or asleep at the time of the alleged incident. He acknowledged that Trial Counsel raised the issue with respect to count one. However, he said Trial Counsel failed to raise the issue in count three. He said this was important because the victim initially said she was asleep prior to the alleged incident, however, at trial she said she was awake. He also said Trial Counsel failed to address count two, wherein the victim stated that she only heard rather than actually saw the perpetrator.

The Petitioner also referred vaguely to a "due process review," which he said had been granted from Nashville based on false statements in his underlying arrest warrants. He said

that his statements to Ray Gilder, pastor of Gath Baptist Church and a key prosecution witness, as well as to Jimmy Blankenship, were "obtained from the poisonous tree" because the warrants were based on false statements. He also alleged that the trial judge had a personal relationship with Ray Gilder and claimed that he saw them having a personal conversation after his second trial. Based on this relationship, the Petitioner alleged that the trial court had a conflict of interest and orally moved for him to recuse himself a year before trial. He said that the trial judge never resolved his oral motion for recusal or any of the "over a hundred documents that were true prosecutorial misconduct." Finally, the Petitioner said that Trial Counsel was ineffective for failing to file the motion to recuse and that the Petitioner was prejudiced because "any other judge would have found the testimony of Ray Gilder concerning the petitioner's marital problems was irrelevant."

The Petitioner said that the only strategy employed by Trial Counsel was "he said/she said." He thought Trial Counsel should have investigated the fabricated warrants, prosecutorial misconduct, and used the $15,000 to have the victim psychologically evaluated. The Petitioner also asserted that at the sentencing hearing, the State was permitted to put forth a psychological evaluation of the victim, which he wanted Trial Counsel to suppress. He believed that the State withheld the victim's evaluation because, in response to his motion for discovery, the State denied having a psychological evaluation of the victim. He said that the psychological evaluation contained exculpatory statements, namely that victim did not experience psychological or medical problems until after she knew the Petitioner was fired from the church.

The Petitioner also claimed that the State failed to disclose certain information which created an "unfair surprise." He handed the trial judge two lists of exculpatory evidence he believed were concealed by the State prior to trial and "protective measures taken by me that would tend to prove my innocence rather than my guilt that defense counsel never once brought up pretrial or during the trial."

After the Petitioner's testimony, there was, yet again, a discussion regarding whether he was proceeding with his claims of ineffective assistance of counsel during the motion for new trial. With regard to certain witnesses the Petitioner wished for Successor Counsel to call to the stand, Successor Counsel said:

> I am in a weird position because I am advocating on behalf of [the Petitioner]. He provided me with a list of seven (7) witnesses to possibly call at his Motion for a New Trial. Based on the fact that I am lead counsel on this, and based on my law degree and being licensed to practice law in the State of Tennessee, I made the determination that I don't want to prejudice [the Petitioner] going forward the way he wants to go forward. It is my belief that [the District

-6-

Attorney] is not likely to take the stand and say that he committed perjury or prosecutorial misconduct and give the kind of proof that [the Petitioner] thinks he needs to go forward. I don't want to stop him from doing that, but I didn't call [the District Attorney] to do that today. . . .

The Petitioner advised the Court that he had certain documents he intended to submit as evidence. The Petitioner stated:

> I want to make sure, as the State mentioned, is that I am coming up here saying all these things without proof to back it up. I have got the proof in [Successor Counsel's] possession. Okay? I want to make sure that I preserve the proof before you make your judgments. I want to present my proof. I want to make sure you see what proof we have, on alibis and so on and so forth, that defense counsel failed to subpoena.

In response, Successor Counsel acknowledged over two-hundred documents in his possession that were provided to him by the Petitioner. Successor Counsel then stated:

> [A] large portion of this is work product and it can't be submitted. I suppose he did it himself and then gave it to me. A large majority of the materials that [the Petitioner] and I covered is going line by line through some of the record, and there is at least four hundred and some odd inconsistent statements. So, a large part of the proof would be she said this when this and this and this would have proved this.

Initial Counsel did not testify at the motion for new trial hearing. Trial Counsel, licensed to practice law since 1994, testified that he began representing the Petitioner in 2003. Trial Counsel did not dispute that the Petitioner gave him "numerous bound volumes" of between five-hundred (500) to one thousand (1000) pages; however, he characterized the volumes as "incredible." Trial Counsel did not consider the statements submitted to him by the Petitioner to be false as he understood the definition of false statements.

Trial Counsel, along with the Petitioner's mother, met with the Petitioner to discuss whether the Petitioner would testify at trial. Trial Counsel stated that the Petitioner initially indicated a desire to testify. Trial Counsel said that they had already impeached the victim with prior inconsistent statements and that the testimony of the Petitioner would not have been helpful. If the Petitioner testified, Trial Counsel was concerned he would "get into all this other stuff that he felt was going on at [Gath Church]." Trial Counsel denied threatening to quit or recuse himself from this case if the Petitioner testified. Trial Counsel said that he "tried to make [the Petitioner] aware of how it looked from both sides." Trial Counsel

acknowledged there were "other numerous allegations" of sexual assault against the Petitioner, and he was concerned that the Petitioner would open the door to those matters if he testified. Trial Counsel testified that it was ultimately the Petitioner's decision not to testify.

Trial Counsel acknowledged that the Petitioner discussed an alibi defense. Before testifying as to the details of the alibi defense, Trial Counsel requested and received permission to consult with the Tennessee Board of Professional Responsibility. Upon determining that Trial Counsel was permitted to testify regarding the details of the issue, Successor Counsel consulted with the Petitioner, who ultimately decided to abandon his claims to an alibi defense.

Trial Counsel attempted to contact the victim to obtain a pre-trial statement; however, she refused to speak with him. Trial Counsel reviewed the victim's preliminary hearing testimony and compared it to her statement given to the Department of Children's Services. At trial, Trial Counsel raised inconsistencies found in the victim's statements, primarily that she omitted the fourth incident from her initial statement and did not mention it until the preliminary hearing. On cross-examination, Trial Counsel acknowledged that he had obtained a psychiatric evaluation on the Petitioner; however, he had no knowledge of a $15,000 grant for investigation. Trial Counsel did not recall a motion to recuse the trial judge and did not file a bill of particulars. Trial Counsel acknowledged that he reviewed the video-taped interview of the Petitioner and said that it was excluded from trial. Trial Counsel agreed that he did not review it with the Petitioner at the jail.

On June 7, 2007, the trial court filed an order incorporating its oral findings from the motion for new trial and denying relief, which stated, in pertinent part, the following:

> [T]he Petitioner incorporated into his grounds for a new trial issues related to ineffective assistance of counsel which would normally be reserved for a Post Conviction Relief proceeding. In order to assist the defendant in developing an appropriate record for appeal on the issues related to ineffective assistance of counsel, the Court has conducted a hearing and taken proof on the issues of ineffective assistance of counsel so that the Court could rule on those issues as a part of its decision on the motion for new trial. . . . Having reviewed all the pleadings filed by the defendant, the Court finds no issue raised by the defendant which would warrant the grant of a new trial in this cause. As to issues argued at the May 29, 2007 hearing, the Court made certain oral findings, which shall be incorporated into this Order by reference.

The trial court provided extensive oral findings which, in pertinent part, were as follows:

> I don't have the instructions that I read [to the jury at trial] in front of me. I took it from the testimony today that I actually quoted the Pattern Jury Instruction on deadlocked Juries.
>
> . . . .
>
> In this case, I don't recall having made the statement to the Jury of anything other than, well, see what you can do. If you are able to reach a verdict, fine. If you are not, we will come back. I think that is what I said. But if I am wrong, so be it.
>
> . . . .
>
> All right. Let me start off with the defendant's problem with the preliminary hearing which lead to the fourth count of the indictment. Lots of things change at preliminary hearings in between the time that criminal warrants are taken out and the time that the case comes out of the Grand Jury. Grand Juries can modify. They can add counts, and anything such as that. I think any problems that were brought up in the preliminary hearing were rectified by the Grand Jury's indictment on that count, which also gave him notice of what he was being charged with. Change of venue. There is no proof in front of the Court that this gentleman could not get a fair trial here. He made some statements regarding the newspaper or press, but I don't have anything in front of me at this time showing that I improperly refused to grant a change of venue. The victim's psychological evaluation. I do recall that Mr. Miner said there were two (2) similar cases going on at the same time, both of which wanted experts to come in and testify as to credibility of children and credibility of witnesses as to what they saw or think they remembered. In one case I had overruled the exact same issue that we have got here as to the credibility of children and credibility of witnesses and experts to come in and testify as to why you should or should not believe someone. It was this Court's opinion that the Superior Courts have said that that is not something that would require expert testimony. It is solely in the providence of the Jury and lay persons can make that determination on their own. One of the main issues that [the Petitioner] has is changes in the victim's story from the time that she first went into the DCS and told them about what happened until she came to trial. I have no doubt that [the Petitioner] believes that he has found many discrepancies, or as he calls them perjury, or inconsistent statements in the victim's story. The question is, did the defense counsel know about those discrepancies and utilize them as best as they could in trying to defend [the Petitioner]. Well, the truth is that Mr. Grissom had all of the statements as I

can tell from the victim, and went over the preliminary hearing, and went over transcripts of the Department of Children's Services and people that took statements from the victim in this case, and did what he could to question the victim on the witness stand in his cross examination. Now, I don't remember every detail of this case. I do remember parts of the case, and I do remember that part. I do remember that defense counsel cross examined the victim in this case about the different statements, and why would you say this when you said this earlier, and arguing that to the Jury, that you can't believe this victim, and going through those instances. Now, [the Petitioner] and his counsel may have a different idea about what is really important, what is a material discrepancy and what is a minor inconsistency. That is stated in the instructions, that minor inconsistencies don't necessarily mean that someone is not telling the truth. Defense counsel, I am sure, elected not to go every single sentence if it was not repeated verbatim over the years until she got to Court. I do remember that they cross examined the victim on prior inconsistent statements extensively, as they should, because that was their basic defense, that she is making this up, or exaggerating it, and was unable to keep the same story. I don't think defense counsel failed to do what they were supposed to do with the discrepancies in testimony and discrepancies in prior statements. The warrants that were falsified, I can't find that the warrants were falsified. Again, if the warrants weren't completely correct, I think that was remedied by the Grand Jury's indictment. There is no proof in front of me that Investigator Rowland intentionally falsified any warrants or wrote down anything that was specifically found in a different way. Now, he may have written something down and this young lady changed her story to some extent later on. That may be the case, but that does not invalidate the indictment. So, I don't find any credibility there. Going back to the charge to the Jury, there is no proof that what I said was prejudicial. As I said, I don't think I said anything that caused the Jury to do anything except try to continue deliberations and come to a verdict if they could do so based on the evidence and the law. The defendant not testifying, that also is a critical part of defense counsel's strategy. I find it very difficult to believe that Mr. Grissom said that he was going to quit or recuse himself in the case if [the Petitioner] testified. One of the things that I will note is that [the Petitioner] has always been very courteous with this Court, and always spoken straightforward. He was that way with defense counsel as far as I could tell during the trial. One part that I do remember is going over with [the Petitioner] about whether or not he wanted to testify. I think he and counsel had a long discussion, as often times happens in these types of cases, as to whether or not the defendant would testify. By all accounts, his mother was there and was engaged in the conversation. Based

on what [the Petitioner] indicated to me at the time, he knew what he was doing. I did not feel there was any coercion at that time, nor do I now, about Mr. Grissom telling [the Petitioner] not to testify. I think he had an obligation to tell [the Petitioner] what his opinion was with regard to whether or not it would affect the outcome of the case, what might happen, and what might happen if he did not testify. I think after all that, the decision was intelligently made. [The Petitioner] is a smart man. All counsel can do at that point is give the defendant their opinion and their options, and make sure that they understand those. As Mr. Grissom said, we can't make the decision for him. We can only give him the options of what can happen. The victim's statements. [The Petitioner] indicated that there was a victim statement that was either not turned over or newly discovered evidence. I don't know at this time what that is I think Mr. Grissom had all the statements that were made. There has been nothing else produced to me that should have been turned over that was not. So, I don't find any merit to that. [The Petitioner] says that defense counsel assisted the State at trial. I do not find that credible. I listened to the trial. As far as I remember at the time, I did not have any feelings about the case that defendant's counsel did not do at least what would minimally be required to satisfy their job as to making all reasonable efforts to defend [the Petitioner]. . . . The due process review issue, I think Mr. Miner is probably correct. That would seem to be a DCS issue that would have no bearing on this case. It was pre-trial, and I have no idea what that would be, other than some type of civil matter. There was some conversation about me recusing myself. That part I do not recall. I do not recall [the Petitioner] asking me to recuse myself. I would have had no reason to. Obviously, if that issue did come up, I would have implicitly have overruled that request. I don't ever recall speaking to Mr. Gilder. If I did after the trial, I don't recall if I did. It had to be a very short conversation. I wouldn't know the man if he walked in here today. . . . I don't think counsel was lacking in preparation of the case. . . . There is nothing in front of me showing that the State concealed exculpatory evidence. There is nothing showing that defense counsel didn't know of previous statements made by the victim. I find it very difficult to believe that the defendant only knew he was going to be tried on Count One. . . . There were obviously several counts, and nothing to indicate that they would not be tried together. . . . The identification of the defendant. . . . Taking the testimony as a whole in the case, there was no question that the [Petitioner] that is before us now is the one that was alleged to have committed these acts. . . . [The Petitioner], I think, knew what was on the video tape of him. Mr. Grissom did as he should have. He watched the video tape and went over it to see what his client said. I think they went over that with [the Petitioner]. A better practice

-11-

would probably have been to actually watch the video with him, but there is testimony before me today that he was aware mostly, or if not, to a large extent of what was said and what was on the tape, and he knew approximately what he said on that video tape. . . . There is no testimony from any Jurors, and no affidavits that they would have reached any other verdict. I don't think I hurried them . . . . The clergy privilege, that was not raised at trial, and I don't find that there is any privilege for a deacon of the church regarding one of their employees. . . . [The Petitioner] seems to think it would have made a difference where the doors were and things of that nature. I recall at least some discussion about that during the trial, but nothing that would have really made a difference.

Following the denial of the motion for new trial, Successor Counsel filed a direct appeal. On direct appeal, Successor Counsel argued that: (1) the evidence was insufficient to sustain the convictions; (2) the trial court improperly instructed the jury after the jury deadlocked; and (3) the trial court erred when it ordered consecutive sentencing. The State argued, and we agreed, that the Petitioner's appeal should be dismissed for failure to file a timely motion for new trial and notice of appeal. Consequently, we waived consideration of the Petitioner's objections to the jury instructions. In the interest of justice, we elected to review and subsequently affirmed the sufficiency of the evidence and the trial court's order of consecutive sentencing. State v. Jeffrey Simmons, 2010 WL 27881, * 1 (Tenn. Crim. App. 2010).

Successor Counsel was relieved of representing the Petitioner by order of the trial court on June 1, 2011. On June 14, 2011, the Petitioner, acting pro se, filed an eighty-five (85) page petition for post-conviction relief, along with various attachments, alleging the ineffective assistance of Initial, Trial, and Successor Counsel. The trial court appointed post-conviction counsel on July 5, 2011, and ordered the State to respond to the petition. The Assistant District Attorney General filed a brief, noting that the Petitioner had presented his claim of ineffective assistance of counsel as part of his Motion for New Trial and requesting that the post-conviction court dismiss the petition as the Petitioner was barred from re-litigating the issues presented therein.

On May 9, 2012, the post-conviction court conducted a hearing on the motion to dismiss the Petitioner's petition seeking post-conviction relief. At the hearing, the State and Petitioner's Counsel agreed that the Petitioner filed a timely motion for new trial. The State explained that it was "not opposed to [the Petitioner] being granted a delayed appeal on the issues that he should have been able to argue had [the Court of Criminal Appeals] been able to ferret out the record[.]" While the State agreed to a delayed appeal, it objected to allowing the Petitioner to proceed with a hearing on the ineffective assistance of counsel claims

because the court had already ruled on those issues in the motion for new trial. Petitioner's counsel argued that the Petitioner was "not allowed to litigate all the claims he had [at the motion for new trial]." She said that the Petitioner was unable to present documentary evidence or any claims against Successor Counsel. The Petitioner added that Successor Counsel "told [him] that he forgot to bring the [documentary proof in support of the motion for new trial]." The post-conviction court noted the "tricky" situation of the Petitioner's attempting to include claims of ineffective assistance of Successor Counsel in his motion for new trial or his petition for post-conviction relief. The Petitioner insisted, however, that "it would benefit [him] more if [he] raised all [of his] issues in [his] current post-conviction petition."

In its June 1, 2012 order dismissing the petition for post-conviction relief but granting a delayed appeal, the trial court stated:

> Various efforts were made to clarify whether the Defendant wished to present issues of ineffective assistance of counsel at his Motion for New Trial including "Order in Preparation for Motion for New Trial" filed March 23, 2005, a "Motion to Strike all Prior Affidavits in Support of Motion for New Trial and to Replace Said Issues with the Following Affidavit in Support of a Motion for New Trial" filed by the Defendant on April 11, 2005, and a letter written by the trial judge to the Defendant on May 9, 2005, cautioning him that if he chose to litigate issues of ineffective assistance of counsel by way of Motion for New Trial he would be barred from re-litigating those issues by way of Petition for Post-Conviction Relief.

In the same order, the trial court granted a delayed appeal. It noted that the Defendant's motion for new trial was not found by this Court on his direct appeal because it was "buried in the voluminous Pro Se pleadings filed by the Petitioner." It concluded that the Petitioner had, in fact, filed a timely motion for new trial; therefore, the Petitioner should be allowed "direct appellate review on issues argued at his Motion for New Trial hearing, which were not addressed during his appeal of right."

It is from this order that the Petitioner appeals.

**ANALYSIS**

**I. Mistrial Comment to Jury by Trial Court.** In his direct appeal, the only issue this court declined to review as a result of the purported untimely motion for new trial was whether "the trial court gave improper jury instructions after the jury became deadlocked which prejudiced the Appellant and precluded his ability to receive a fair and impartial trial."

As previously stated, the State maintained that the issue had been waived because "the defendant acknowledged in his brief that he failed to object at trial to the instructions of which he now complains," see Tenn. R. App. P. 36(a), and that the defendant failed to include the issue in his motion for new trial.

In State v. Kersey, 525 S.W.2d 139, 144-45 (Tenn.1975), the Tennessee Supreme Court adopted Sec. 5.4 of the ABA Standards Relating to Trial by Jury, directed its use by the trial courts faced with deadlocked juries, and disapproved of the Allen or "dynamite" charge. See Allen v. United States, 164 U.S. 492, 501, 17 S. Ct. 154, 157 (1896); Commonwealth v. Tuey, 62 Mass. 1, 1-2 (1851). Under Kersey, trial courts "may require the jury to continue their deliberations and may give or repeat an instruction. . . ." Kersey, 525 S.W.2d at 145. Trial courts "shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." Id. "The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." Id. Finally, the court in Kersey cautioned:

> Any undue intrusion by the trial judge into this exclusive province of the jury, is an error of the first magnitude. We recognize that the trial judge has a legitimate concern in the administration of justice and that he labors under a duty to lend guidance to the jury through instructions as to the governing principles of the law. However, when the effort to secure a verdict reaches the point that a single juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded and the requirement of unanimity is diluted.

Id. at 144.

The record reflects that the jury began deliberations at 4:25 p.m. and informed the trial court that it had a question at 8:10 p.m. The record does not provide the specific question which caused the trial court to convene the jury. In open court and in the presence of all parties, the following exchange occurred:

> THE COURT: I understand that you have not been able to reach a verdict yet. There are a couple of things that can happen. One, is if you feel like you are making any progress, or can make any progress towards reaching a verdict, I can let you go back in and you can continue to deliberate tonight. If you are too tired to do it tonight, you can come back Monday morning and continue. If the Jurors feel like there is not a chance, and that you have gone through everything completely and there is no chance that the Jury can reach a unanimous verdict, then we would declare a mistrial. So, I guess my question

-14-

at this point my question is to you, is there any possibility that you could continue and reach a verdict either tonight, or come back Monday morning?

[STATE'S ATTORNEY]: Your Honor, could you explain to them what a mistrial is?

[THE COURT]: Any objection?

[DEFENSE COUNSEL]: No.

[THE COURT]: Well, let me put it this way. We would declare a hung Jury. Then, the case would go back to its' [sic] original status. We would just start over at a different time with a different Jury. Now, if there is a possibility that you are making any progress, and that you could reach a unanimous verdict in good conscience, you can do that. Again, if you feel that you cannot do that, and there is no point, and it would futile to do that, then we will simply declare a hung jury.

The jury returned to the jury room at 8:14 p.m. to deliberate. Twenty minutes later, at 8:34 p.m., the jury returned to the courtroom with guilty verdicts as to each count in the indictment.

As an initial matter, even though Trial Counsel failed to make a contemporaneous objection to the trial court's explanation of a mistrial, this issue was included in the Petitioner's motion for new trial. "An erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, may be raised for the first time in a motion for a new trial and is not waived by the failure to make a contemporaneous objection." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005) (citing State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996); Tenn. R. Crim. P. 30(b)). Therefore, contrary to the State's argument, this issue has been properly preserved for appellate review.

The Petitioner does not argue that the trial court's response to the jury's question constituted an impermissible "Allen" or "dynamite" charge. Instead, the Petitioner contends that the trial court's supplemental definition of a mistrial; namely, that "we would just start over at a different time with a different jury," violated the dictates of Kersey by implying that it would be a considerable inconvenience to retry the case. We begin by acknowledging that the trial court should not have commented on the potential for a retrial in this case. See State v. Lee Turner, No. M2005-02749-CCA-R3-CD, 2007 WL 845894 at * 6 (Tenn. Crim. App. March 16, 2007) (finding trial court's comments concerning possible retrial did not require reversal but noting disapproval of practice). Such comments are not appropriate for

-15-

consideration by the jury. Indeed, a mistrial may not result in a new trial because that decision is left to the discretion of the prosecution. United States v. Bonam, 772 F.2d 1449, 1450 (9th Cir.1985) (noting that comments concerning a retrial have "'no proper place before the jury' because 'it is not true that the case will have to be retried; that is a matter of prosecutorial discretion'"); United States v. Hernandez, 105 F.3d 1330, 1334 (9th Cir. 1997) (holding that comment concerning retrial to jury was not coercive because it was made in the context of "the district court's statement that no other set of jurors would be better equipped to decide the case than this jury").

However, an error in the jury charge is not necessarily grounds for reversal. Johnson v. Hardin, 926 S.W.2d 236, 243 (Tenn. 1996). Reversal is appropriate only if the error was a material factor in producing the verdict. Id.; State v. James Cecil Baxter, 938 S.W.2d 697, 704 (Tenn. 1996). On this record, we are unable to conclude that the trial court's comments to the jury coerced their verdict. First, although the Petitioner argues that the jury was "deadlocked," nothing in the record suggests that the jury was at an impasse. The trial court's comments were directed to the jury as a whole, not any single juror who may have been in the minority. Given the evening hour of deliberations, the trial court's initial comments appear to have been made for the purpose of scheduling. See State v. Howard Barnwell, No. 935, 1986 WL 4491 (Tenn. Crim. App. April 14, 1986). When the trial court was asked to further define a mistrial, it replied, "We would declare a hung Jury. Then, the case would go back to its' [sic] original status. We would just start over at a different time with a different Jury." Importantly, the trial court did not explicitly refer to the expense of a retrial or the burden of a jury deadlock. See United States v. Giacalone, 588 F.2d 1158, 1167 (6th Cir.1978) (noting disfavor with trial court's comments to jury placing undue emphasis on the expense and burden of conducting a retrial); United States v. Harris, 391 F.2d 348, 354 (6th Cir.1968) (same). Accordingly, we conclude that the trial court's comments were not a material factor in the jury's verdict. The Petitioner is not entitled to relief.

**II. Dismissal of Petition for Post-Conviction Relief.** The Petitioner contends that the trial court erred in dismissing his petition for post-conviction relief. We disagree with the Petitioner and conclude that the trial court properly dismissed the petition without considering the Petitioner's claims of ineffective assistance of Initial and Trial Counsel. We review the post-conviction court's dismissal of the petition, as an issue of law, de novo on the record without a presumption of correctness. See Burnett v. State, 92 S.W.3d 403, 406 (Tenn. 2002).

The Post Conviction Procedure Act provides, in pertinent part, as follows:

Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the

facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

. . . .

A ground for [post-conviction] relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

Tenn. Code Ann. § 40-30-106 (f), (h) (2012).

Here, the Petitioner seemingly argues that he did not fully understand that he would be barred from claiming ineffective assistance of Initial and Trial Counsel in future proceedings. The record overwhelmingly indicates that the Petitioner was keenly aware of the consequences of combining his ineffective assistance claims with his motion for new trial. The trial court repeatedly advised the Petitioner, in open court and by letter, of the perils involved with including his claims of ineffective assistance of counsel with his motion for new trial. The Petitioner acted pro se for the bulk of his post sentencing proceedings, and the record reflects that he spent considerable time researching the legal issues involved in his case. Ignoring the warnings of the trial court, the Petitioner presented proof of his ineffective assistance of Initial and Trial Counsel claims at his motion for new trial hearing. Accordingly, the trial court properly dismissed as previously determined the portion of the petition in which the Petitioner attempted to re-litigate his claims of ineffective assistance of Initial and Trial Counsel. We are unable to address these claims in this appeal, as intimated by the parties' appellate briefs, because none of the Petitioner's claims of ineffective assistance of counsel were raised in his original direct appeal. See State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App.1986) (citing State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App.1984) (noting that it is counsel's responsibility to determine the issues to present on appeal)).

However, the Petitioner included additional claims of ineffective assistance of Successor Counsel in his petition for post-conviction relief. This court has previously held that "allegations regarding the ineffectiveness of appellate counsel, when trial and appellate counsel are different, are not waived under the Post-Conviction Act when those allegations are not presented on direct appeal." John Earl Scales v. State, No. M2001-00310-CCA-R3-PC, 2002 WL 1949697, at *2 (Tenn. Crim. App. Aug. 23, 2002) (citing Kendricks v. State, 13 S.W.3d 401, 405 (Tenn. Crim. App.1999)); Ronald Yates v. State, No. W2008-02067-CCA-R3-PC, 2009 WL 4505436, at * 3 (Tenn. Crim. App. Dec. 3,

-17-

2009).  Moreover, this court has recognized that a defendant retains a surviving claim of ineffective assistance relative to the performance of successor counsel in relation to his representation on the motion for new trial.  See  Laraiel Winton v. State, No. E2011-00762-CCA-R3-PC, 2012 WL 273759, at * 5 (Tenn. Crim. App. Jan. 31, 2012), perm. app. denied (Tenn. Aug. 16, 2012); Russell Lane Overby v. State, No. W2001-01247-CCA-R3-PC, 2002 WL 818250, at * 2 (Tenn. Crim. App., Apr. 26, 2002), perm. app. denied (Tenn. Sept. 9, 2002).  By its summary dismissal, the post-conviction court precluded the Petitioner from setting forth proof in support of his claims of ineffective assistance of Successor Counsel. Accordingly, we reverse the trial court's dismissal of the portion of the post-conviction petition alleging ineffective assistance of Successor Counsel and remand for a hearing.

## CONCLUSION

Based on the above authority and analysis, we affirm the post-conviction court's dismissal of the portion of the petition for post-conviction relief claiming ineffective assistance of Initial and Trial Counsel.  We reverse the post-conviction court's dismissal of the portion of the petition claiming the ineffective assistance of Successor Counsel and remand for a hearing.  We further conclude that the trial court's comments regarding a mistrial did not coerce the jury verdict in this case; therefore, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE